**BAUSCH & LOMB INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 183 and 184, Dockets 32553, 32677.**

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1968.

Decided Dec. 18, 1968.

Truman G. Searle, Rochester, N. Y. (Nixon, Hargrave, Devans & Doyle and Gerald L. Paley, Rochester, N. Y., on the brief), for petitioner.

John I. Taylor, N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Michael N. Sohn, N.L.R.B., on the brief), for respondent.

Sipser, Weinstock & Weinmann, and Richard Dorn, New York City, on brief for amicus curiae, United Optical Workers Union, Local 408, IUE, AFL-CIO.

Before KAUFMAN and ANDERSON, Circuit Judges, and TENNEY, District Judge.*

ANDERSON, Circuit Judge:

Following a decision filed by the Regional Director on May 5, 1966, a representation election was held on May 26, 1966 in a unit composed of certain ophthalmic laboratory employees at the New York City branch of Bausch & Lomb, Inc. Out of twelve eligible voters, four cast ballots for and eight against representation by the United Optical Workers Union, Local 408, International Union of Electrical, Radio and Machine Workers, AFL-CIO.

On June 2, 1966, the Union filed objections to the election which, it claimed, had been unfairly influenced by "gross misstatements of fact" in a Company letter dated May 23, 1966, three days before the election. That letter stated in pertinent part:

"If the union wins the election all items dealing with wages, hours and working conditions are bargainable—that means they must be discussed between the Company and Union and may change as a result of these discussions. This means your rate of pay, Group Insurance, Pension Plan, Christmas Bonus, Vacations, etc., are all subject to negotiation and therefore could be changed, they may be more, they may be less than you have. *The Local in Minneapolis of the same union trying to represent you agreed last November that the four B & L employees represented by them will not receive a Christmas bonus. The Union also agreed they will not get the new pension plan.* This was the result of discussions with the Union there. I don't know if that will happen here since no one can predict the outcome of negotiations. * * *" [1]

(Emphasis added.)

The Union specifically challenges the italicized portion of the letter. With respect to the Company's assertion that the Minneapolis employees would not get a Christmas bonus, the Union answered that its fellow local had filed unfair labor practice charges against the employer and thereby compelled it to pay the bonuses. It also asserted that the em-

* United States District Judge, Southern District of New York, sitting by designation.

1. There was also a dispute concerning Company statements about the Evans-ville local of the Union, but since that was ultimately decided in the Company's favor, it need not be discussed.

ployees were not bereft of a pension plan because one already existed.

█ In response to these allegations, the Company submitted an affidavit by the Company's Manager of Regional Industrial Relations, which apparently described the Minneapolis contract eliminating the Christmas bonuses, and which also explained the negotiations with the Minneapolis Union that accepted a package without the new pension plan. With post-election issues thus drawn, it became the responsibility of the Regional Director to hear and decide the case and dispose of the questions involved. Such action "may be on the basis of an administrative investigation or, if it appears * * * that substantial and material factual issues exist which can be resolved only after a hearing," on the basis of an evidentiary hearing. 29 C.F.R. § 102.69(c).

In this case, the Director chose to conduct an independent investigation after which he entered a Supplemental Decision on July 19, 1966. Although it is stated therein that the parties were afforded a full opportunity to submit evidence, it is unclear what additional evidence was in fact offered and by whom. In any case, the Director refers to certain statements which made their way into his hands:

"[I]t is apparent from a copy of a contract between the Employer and the Minneapolis local on November 20, 1965 * * * that the Union did in fact agree at Article XVI thereof that employees covered by the agreement would not participate in future year-end bonuses during the contract term. A representative of the Minneapolis local does not deny that it entered into the above agreement, but *explains* that the employees preferred—and were granted—five additional sick leave days in lieu of a bonus. This *attempted clarification* does not detract from the literal correctness of the Employer's assertion in its letter, which obviously refers to the 1965

contract, however, short it may fall from depicting all of the aspects of bargaining related to the bonuses.

"Furthermore, the same Union representative concedes that the Employer did proffer a new pension plan during the 1965 bargaining sessions. He *states* that the then-existing plan was deemed by the Union more desirable than the new plan 'because of the particular circumstances in Minneapolis (two people on the verge of retiring).' Therefore, the Union may not be said to have 'agreed' * * * [not] to include the covered employees in the new pension plan. * * * However, the term 'agreement' may be used to indicate a reasonable expression, rationalization or interpretation of the conclusions reached by the contracting parties following their discussions and comparisons of the existing and proposed pension plans. In such a sense the statements concerning the bonuses and pension plan did not constitute material misrepresentations of the historical facts and the objection is not well-founded." (Emphasis added.)

Although the National Labor Relations Board argues that the Director's statement of the Union's explanations of the actions of the Minneapolis local constitutes specific findings of fact, the record does not support this. Rather, it appears that the Regional Director concluded that *even if* the Union's allegations and arguments were correct, its objections were without merit because they did not refute the literal correctness of the Company's statements.

The Company, which had defended against the Union's claim of "gross misstatements of fact" before the Regional Director by demonstrating the truthfulness of its statements, did not learn of the Union's "explanations" until July 19, 1966 when the Regional Director's Supplemental Decision was filed. Its only opportunity to offer evidence to counter or meet them was in the event the Union in seeking review asked for a hearing. On July 28, 1966, the Union did petition

the Board for review of the Regional Director's decision, which, it claimed, had departed from reported Board precedent. The petition for review expanded somewhat upon the allegations which the Union representative had made before the Regional Director, namely, that the Minneapolis employees preferred additional days of sick leave to the Christmas bonus, and the old pension plan to the new one. The Union did not, however, ask for a hearing. In its statements in opposition to the Union's request, the Company urged denial of review as a matter of law. In its brief, it requested a hearing if the Board should believe that the Union's factual allegations were relevant.

On December 9, 1966, the Board issued a decision overruling the Regional Director and ordering a second election. After reciting what appears to be the Union's statement of facts, the Board held that the Company's "omission of critical facts on the subject of Christmas bonus and pension plan negotiations could and, * * * [in the Board's] judgment, did render the statements so misleading that the omission had a material and substantial effect upon the employee's free choice in the election." Then, in a footnote, the Board disposed of the Company's request for a hearing:

"As it [the Company] has not substantially controverted the facts set forth above, which indicate that five additional days of sick leave were granted in exchange for the participation in future Christmas bonus and that the employees themselves preferred the existing pension plan, we reject the Employer's contention that a hearing is necessary to resolve factual issues."

In the second election which was held on May 4, 1967, seven out of twelve ballots [the 13th was challenged] were cast in favor of the Union. The Company filed timely objections thereto and requested a hearing. The gravamen of its complaint was that the Board's erroneous decision with respect to the first election had affected the outcome of the second since the Union was able to campaign unfairly on the basis of the Board's findings while the Company felt legally constrained from challenging the official determination of the Board for fear of being accused of attempting to undermine the Board's process.[2] After an independent investigation the Regional Director overruled the Company's objections; he denied a hearing because the Board had previously found the Company's arguments and contentions insufficient to justify a hearing; and he found neither misstatements nor distortions of substance in the Union's campaign literature.

Thereafter, in its timely objections to the Regional Director's report, the Company submitted "previously unavailable" evidence which tended to contradict the Board's earlier post-first-election findings.[3] On September 28, 1967, the Board affirmed the Director's findings and conclusions, rejected the Company's new evidence as "untimely," and certified the Union as the exclusive bargaining representative of the employees in the appropriate unit. Shortly thereafter followed the Union's request to bargain, the Company's refusal, and the Regional Director's issuance of a complaint against the Company. The Trial Examiner heard the case and granted summary judgment against the Company (since the factual issues had been previously

2. The Company specifically attacks one Union comment as improper:
   "The Federal Government, through its National Labor Relations Board, has decided that the company did wrong by tainting and distorting the facts to you, and the government has ruled that the people, now that the facts are being made known to them, are entitled to a new vote."

3. Namely, that five additional days of sick leave were not received in lieu of the bonuses, and that the Minneapolis employees, themselves, did not favor the old pension plan over the new.

determined by the Board). In due course, the Board affirmed that decision and ordered the Company to bargain, if requested. This case is now before this court on the Company's request for review and the Board's petition for enforcement.

Of the many arguments put forth by the Company, the strongest is its claim that the Board erred in summarily rejecting its request for a hearing after the first election. Because we deny enforcement on that ground, it is unnecessary to discuss the Company's other objections.

■ In failing to respond to the Company's request for a hearing in light of the Union's petition for review of the. Regional Director's first decision, the Board appears to have confused the roles of the parties in this case with the usual request for a hearing by the party challenging an election. In the latter situation, the objecting party submits its complaint which is acted upon by the Regional Director, normally after an independent investigation. His decision includes findings of fact and conclusions of law intended to settle the issues raised. The *party against which that decision falls* is not left without remedy. It may petition the Board for review of the decision and for an evidentiary hearing, to which it has a right if there are substantial and material factual issues in doubt. NLRB v. Joclin Manufacturing Co., 314 F.2d 627, 631–632 (2 Cir. 1963). But the hearing is not granted automatically; instead, the objecting party must offer the Board specific evidence which prima facie would warrant setting aside the decision of the Regional Director. NLRB v. O. K. Van Storage, Inc., 297 F.2d 74, 75 (5 Cir. 1961). There is good reason for this requirement in such a case; since the objecting party is challenging specific factual findings in the Regional Director's decision, he must make a preliminary showing that a hearing will not be a waste of time.

■ By analogy to these standards of procedure, the Board argues that, after the Regional Director's decision was published, the Company, the *prevailing* party in that decision, had a duty to come forward with enough evidence to make a prima facie case for an evidentiary hearing if it believed there were factual conflicts still to be resolved. None of the cases, however, which the Board cites in its brief supports the burden it seeks to place upon the Company. Instead, each case describes the steps which the *party that has not prevailed* below must take to obtain a hearing to reverse the adverse findings against it. NLRB v. Douglas County Electric Membership Corp., 358 F.2d 125, 130 (5 Cir. 1966); NLRB v. Certified Testing Laboratories, Inc., 387 F.2d 275, 278–279 (3 Cir. 1967); NLRB v. O. K. Van Storage, Inc., supra, 297 F.2d at 75–76; NLRB v. Sun Drug Co., 359 F.2d 408, 416 (3 Cir. 1966); NLRB v. Tennessee Packers, Inc., 379 F.2d 172, 178 (6 Cir.) cert. denied 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). Nor are we prepared to take such a step, since the instant case is fundamentally different from the traditional one. The Company here had won its case before the Regional Director. Of greater significance, the Regional Director's references to Union explanations do not constitute findings of fact. Since those explanations as alleged were not relevant, as far as the Regional Director was concerned, an investigation of their accuracy may have seemed unnecessary. While the Company appears to have presented no more evidence to the Regional Director than it thought it could get by with and to have taken a somewhat narrow view of its role throughout the early proceedings of this case, we do not fault it, as the prevailing party before the Regional Director, in a very limited decision, for merely requesting a hearing if the Board should consider that there was some merit to the Union's claims in seeking review. The Union never offered and was never required by the

Board to present any evidence or anything in the nature of evidentiary material. Apparently it accepted the Union's allegations and arguments for what the Union said they were, "The true facts." Even allowing for informality in receiving evidence in a Regional Director's investigation, each party should at some point before a final determination by the Board have an opportunity to answer the other party's "explanations" when they are going to be treated as competent and material evidence.

In these circumstances, when the Board decided that the Regional Director had misinterpreted the applicable law and that the explanations were indeed significant, it should have ordered a hearing. As the Board did not do so, enforcement is denied and the cause is remanded for further proceedings in conformity with this opinion.