417 F.2d 1144
 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Presto Manufacturing Company, Intervenor.
PRESTO MANUFACTURING COMPANY, Petitioner.
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 22051.
 No. 22313.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 27, 1969.
 Decided June 5, 1969.
 Certiorari Denied January 12, 1970.
 
 See 90 S.Ct. 556.
 Mr. Laurence J. Cohen, Washington, D. C., with whom Mr. Dixon L. Pyles, Jackson, Miss., was on the brief, for petitioner in No. 22,051.
 Mr. Andrew C. Partee, Jr., New Orleans, La., with whom Mr. Abraham J. Harris, Washington, D. C., was on the brief, for petitioner in No. 22,313 and intervenor in No. 22,051. Mr. Richard C. Keenan, New Orleans, La., also entered an appearance for petitioner in No. 22,313 and intervenor in No. 22,051.
 Mr. Charles N. Steele, Atty., National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Solomon I. Hirsch, Atty., National Labor Relations Board, were on the brief, for respondent.
 Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.
 TAMM, Circuit Judge:
 
 
 1
 Upon a full review of the record in each of these proceedings we find that the orders of the National Labor Relations Board were reasonable, in accord with a proper analysis of the case law, and found substantial support in the record. Accordingly, we affirm and order enforcement thereof.
 
 
 2
 The cases, in their present posture present for our review two questions regarding the certification and subsequent bargaining position of the International Brotherhood of Electrical Workers, AFL-CIO (hereinafter "Union") with respect to the representation of certain employees of Presto Manufacturing Company (hereinafter "Presto" or "Company") in their dealings with management. The question wherein Presto is petitioner, involves the determination of whether the Board properly certified the Union as being the exclusive bargaining representative of the production and maintenance employees of Presto at the Company's Jackson, Mississippi, plant. Basically, the Company contends that the Union's campaign tactics exceeded proper bounds and the resultant election favoring the Union must be held for naught.
 
 
 3
 In the case in which the Union is petitioner, it is the Union's position that the failure of the Company to bargain with the Union as the exclusive representative of these workers is a violation of the National Labor Relations Act and it seeks the aid of the Board to compel bargaining upon request, and for certain additional remedies to effect the status quo ante.
 
 
 4
 On August 11, 1967, an election was held (after hearing and order pursuant to Section 9(c) of the National Labor Relations Act, 29 U.S.C. § 159(c) (1964)) at the Jackson plant. At this election the Union received a sufficient number of votes to qualify as the bargaining representative of certain electrical workers. Objections to the conduct of the election were filed by the Company which were overruled, without hearing, by the Regional Director of the Board on November 9, 1967. The Company objected, inter alia, to certain conduct on the part of the Union in its distribution and circulation of handbills depicting what the Company alleges to be false and misleading campaign propaganda which had the effect of coercing, restraining and intimidating these employees with regard to the election. The Company also objected to the application of the so-called Excelsior doctrine[1] requiring the submittal of a list of names and addresses of these employees to the Regional Director for use by the Union prior to election.
 
 
 5
 In overruling these objections the Regional Director approved the application of Excelsior and also found that as to the alleged improper handbills either they amounted to permissible campaign propaganda or were published far enough in advance of the election to permit proper rebuttal by the Company. The Board refused to review the findings of the Regional Director and denied a subsequent motion by Presto for reconsideration.
 
 
 6
 Turning to that aspect of the case wherein the Union complains of the failure of the Company to bargain collectively, we note that the Union filed an unfair labor practice charge with the Board on November 22, 1967. There the Union charged that the Company had failed, in violation of Section 8(a) (5) of the Act, 29 U.S.C. § 158(a) (5) (1964), to bargain collectively with the Union. A complaint and notice of hearing was issued and following Presto's answer thereto, the general counsel for the Board moved for summary judgment. An order to show cause on this motion was entered and upon the failure of the Company to come forward with new evidence regarding the alleged invalidity of the election, the trial examiner entered judgment in favor of the Union. Both the Union and the Company filed objections to the trial examiner's decision. The Union did so on the ground that the remedial effect of the order was not sufficient to repair the damage incurred by the employees through the Company's failure to bargain. The Company's objections went to the issue of proper election and the inappropriateness of the grant of summary judgment. The Board declined to sustain either viewpoint and instead adopted the findings of the trial examiner and his suggested order. That order required the Company to cease and desist from refusing to bargain collectively with the Union or from interfering with any of the employees in the exercise of their rights under Section 7 of the Act. It also required the Company to bargain with the Union on request with regard to legitimate employee objectives and to post notices to that effect.
 
 
 7
 Both the Company and the Union petitioned this court to review the Board's order. The Company urges reversal of that decision and the ordering of a new election. The Union contends that the order did not remedy the defect sufficiently. The Board cross-petitioned for enforcement of its order. Because the Union's position depends upon the defeat of the Company's contention in the certification case, we treat that question first.
 
 
 8
 * Section 9 of the National Labor Relations Act, 29 U.S.C. § 159 (1964), gives to the Board a broad avenue of discretion with regard to the regulation and supervision of representation elections. It has been vested with authority to insure that labor has the opportunity to organize fairly and freely by guaranteeing that its representation elections are carried out in an atmosphere conducive to freedom of choice. It must be recognized by reviewing courts that the "control of the election proceeding, and the determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone." NLRB v. Waterman S.S. Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 503, 84 L.Ed. 704 (1940). This trust is lodged in the Board for two reasons: (1) Congress has neither the time nor the staff to oversee labor disputes arising out of these elections, and (2) the Board, by accumulation of knowledge and expertise in this field, is better able to carry out the dictates of the statute and the policy behind its enactment in making determinations regarding which conduct amounts to fair and which amounts to foul. In Liberal Market Inc., 108 N.L. R.B. 1481, 1482 (1954), the Board delineated what it felt would and should be the controlling factors in "deciding whether the registration of a free choice is shown to have been unlikely. * * *" There the Board urged that it
 
 
 9
 must [be] recognize[d] that Board elections do not occur in a laboratory where controlled or artificial conditions must be established. We seek to establish ideal conditions insofar as possible, but we appraise the actual facts in light of realistic standards of human conduct. It follows that elections must be appraised realistically and practically. * * * Basically, we feel that the results of a secret ballot * * * should not be lightly set aside.
 
 
 10
 
 Id.
 
 
 
 11
 In appraising the validity of an election and in deciding whether the result should be set aside, the Board has said that it would undertake such measures "only where there has been a misrepresentation * * * which involves a substantial departure from the truth, at a time which prevents the other party * * * from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election." (Footnote omitted.) (Emphasis supplied.) Hollywood Ceramics Co., 140 N.L.R.B. 221, 224 (1962). The trust of the Board is to insure the fair and free choice of bargaining representation. As long as that end is secured, misrepresentations which reasonably have no significant influence on the outcome of an election amount to what is, for want of a better phrase, "harmless error." Thus the criteria used in Hollywood Ceramics, supra, are designed to enable the Board to determine whether the alleged misrepresentations were of a nature that sufficiently contributed to an unfair election. This court approved, last term, the use of these criteria when we said that the Board "[i]n exercising its discretion in the area of misrepresentations during election campaigns * * * uses three criteria: (1) Is the misrepresentation of a material fact? (2) Did the misrepresentation come from a party who has special knowledge of the true fact? [a]nd (3) [D]id the opposing party have sufficient opportunity to correct the misrepresentation? We * * * [found] their use unobjectionable and within the competence of the Board." United Steelworkers of America v. NLRB, 129 U.S. App.D.C. 260, 263, 393 F.2d 661, 664 (1968).
 
 
 12
 In applying the reasoning of Hollywood Ceramics in conjunction with the aforementioned criteria approved by this court in Steelworkers to the objections raised by the Company, we find ample evidence in the administrative record to support its conclusions that the objectionable handbills were either campaign "hawking" distributed with adequate time for reply or were of such a nature as to enable the employees to fairly appraise their content. In any event we find that the Board acted fairly and with substantial support in the record in its conclusions that none of the alleged improper solicitations might reasonably have been expected to, nor, in fact did, have a significant impact on the outcome of the election. The Company, unable to show otherwise, must fail in its bid to overturn the election.
 
 
 13
 With regard to the application of the Excelsior rule, it is the position of the Company that Excelsior was promulgated in violation of the Administrative Procedure Act's requirement of notice and publication of proposed rules. See 5 U.S.C. §§ 552, 553 (Supp. IV 1965-68). This violation, argues the Company, substantially affected the outcome of the election in that it gave the Union an increased advantage in its "ability to see and convert Union adherents." (Company's brief at 24.) This same argument was urged before the Supreme Court in the case of NLRB v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969). There, although the Court agreed that Excelsior was promulgated in violation of the Administrative Procedure Act, it held nevertheless that the Board has the power to require companies to submit lists of the "employee electorate" to unions in an effort to effect parity between the company and the union "by allowing unions the right of access to employees that management already possesses." Id. at 767, 89 S.Ct. 1430. In addition, the Company, here, failed to urge an objection to Excelsior before the Board and "[n]o objection that has not been urged before the Board * * * shall be considered by [this] court, unless the failure * * * to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e) (1964). There has been no showing of extraordinary circumstances in this case and Section 160(e) of the Code must be held preclusive. The Company's attempt to contest Excelsior stands outside of Section 160(e) and runs contrary to the reasoning of Wyman-Gordan.
 
 II
 
 14
 Since the Company's assault on the certification issue has met defeat, we therefore treat the contentions of the Union with regard to what it feels is a too narrow ruling of the Board in its attempt to remedy the unfair labor practice existing in view of proper certification. The Union argues that a Board finding of unfair labor practice necessitates remedial action by that body which will have the effect of restoring the Union and its represented employees to the position they would have held but for the unfair labor practice. This restoration, offers the Union, is the best way to effectuate the policies of the Act and anything less amounts to inattention to the calling of Section 10(c) of the Act, 29 U.S.C. § 160(c) (1964). Its position is that Presto's failure to bargain upon certification worked a substantial hardship upon the employees, and its refusal and attendant delay in bargaining tended to weaken the Union's position with the employees by straining their estimation of the Union's ability to deliver on its campaign promises. The Union goes further in this respect to say that these delays occasioned definable losses in wages and fringe benefits that would have been forthcoming had the Company bargained in good faith. It requests, therefore, in addition to the standard cease and desist order, that the employees be made financially whole and the Union be given greater access to the employees. We are unable to comply.
 
 
 15
 We do not doubt that it is incumbent upon the Board, where it finds disregard of the Act in an unfair labor case, to rectify the situation by ordering appropriate relief. However, we feel that the Company's refusal to bargain was merely an attempt to obtain judicial review of what it felt were substantial questions of propriety of Union campaign tactics. Its attempt was not an exercise in frivolity tending only to delay the inevitable but rather was a bona fide effort to test the validity of what it thought untenable. Additionally, the arguments advanced by the Union here are substantially the same as those urged by the petitioners before this court in Retail, Wholesale, and Department Store Union v. NLRB, 128 U.S.App.D.C. 41, 48, 385 F.2d 301, 308 (1967). We do not think that this case warrants a departure from the reasoning of our prior holding. Therefore, taking into account the broad discretion of the Board with respect to the fashioning of remedies, and the granting of appropriate relief, we find that the case and desist order, coupled with the order to bargain upon request, is sufficient as a matter of law and was not an arbitrary abuse of that discretion in view of the totality of events surrounding the Union's certification. Accordingly, it is our duty to affirm the Board and order enforcement of its mandate.
 
 
 16
 So ordered.
 
 
 17
 Chief Judge BAZELON did not participate in the foregoing opinion.
 
 
 
 Notes:
 
 
 [1]
 Excelsior Underwear, Inc., 156 N.L.R.B. 1236 (1966)