**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MAR SALLE, INC., d/b/a Mar Salle Convalescent Home, Respondent.**

**No. 22621.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1969.

Decided Feb. 18, 1970.

\*     \*     \*     \*     \*

Mrs. Abigail Cooley Baskir, Atty., National Labor Relations Board, with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, were on the brief, for petitioner.

Mr. John K. Pickens, Alexandria, Va., for respondent.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

This case comes before us on application of the National Labor Relations Board for enforcement of its order of October 29, 1968, against Mar Salle, Inc., pursuant to section 10(e) of the National Labor Relations Act (29 U.S.C. § 160(e) (1964)). A representation petition was filed by the Building Service Employees' International Union, Local 536, AFL–CIO, on February 5, 1968; the Union sought therein to organize the employees who worked in respondent's Washington, D. C. nursing home.

It was agreed prior to the hearing on the representation petition that all of the hourly-paid employees would be properly included in the unit appropriate for collective bargaining under the Act, and that they would therefore be eligible to vote in the election should one be conducted. It was further agreed that this group would include all licensed practical nurses, charge nurses, aides and orderlies, kitchen, housekeeping and maintenance employees, but that it would exclude registered nurses, the bookkeeper, dietician, and supervisors, as defined in the Act. (App. 5–6.) Respondent sought to include in the unit five switchboard operators, a medical secretary, and three admissions clerks. The Union contended that these three classifications were essentially office clerical employees and that they should be excluded from the election. (App. 6.)

In its decision and direction of election, the Board determined that the three challenged categories should be excluded from the unit. (App. 33–34 n.2.) Respondent filed a request for rveiew of that decision on the ground that the three classifications had been erroneously excluded. (App. 36–42.) The Board denied the request as raising no substantial issues, except as to the three admissions clerks; as to them the Board amended the decision to allow them to vote in the election, subject to challenge. (App. 42.)

The election was conducted on April 2, 1968, and resulted in seventy-one votes for the Union and thirty-eight votes against, with five challenged ballots. (App. 49.) Respondent filed a timely challenge to the election, alleging misconduct on the part of the Union. (App. 43.) [1] This challenge was considered without a hearing and rejected by the Regional Director; the Union was therefore certified as the exclusive bargaining representative of the respondent's employees. (App. 49–53.)

On June 20, 1968, the Union filed a complaint with the Board, alleging that the respondent had refused to bargain with it despite the fact that it had been designated the exclusive bargaining representative by the Regional Director's certification of May 2, 1968. A com-

---

1. The allegations of union misconduct can be summarized as follows:

1. The union waged its campaign illegally by making wholesale promises to many employees that they would secure more money and greater benefits if the union won the election.

2. [Non-employee members of the union] established a picket line outside the nursing home and carried signs charging the respondent with unfair conduct because it refused to sign a consent election agreement.

3. The union continued to pass out literature and attempted to enroll employees even after the election.

4. Respondent objected to three of the leaflets passed out by the union on the ground that they misrepresented various facts (App. 43–44.)

plaint and notice of hearing were issued against the respondent on June 27, 1968, (App. 59), alleging an unfair labor practice under section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5) (1964).

Respondent's answer admitted that the Union had requested collective bargaining with respect to "rates of pay, wages, hours of employment and other conditions of employment," and further admitted that it had refused and continued to refuse to bargain with the Union, asserting as a justification of this refusal to bargain that the unit had been improperly designated and that the Union's action (*see* note 1 *supra*) was violative of the National Labor Relations Act and precluded a fair and impartial election. (App. 63.) The trial examiner granted the General Counsel's motion for summary judgment (App. 76) and recommended that the Board issue a cease and desist order precluding further evasion of collective bargaining on the part of respondent (App. 78–79); this order was adopted and issued by the Board (App. 83).

Of primary importance in our decision to grant or deny the Board's enforcement petition is a consideration of whether the summary judgment procedure used by the Board constitutes a denial of due process to the respondent. Incident thereto are considerations of whether the Board's unit determination was proper, and whether the Board properly rejected respondent's objections to the Union's pre-election conduct.

## I. THE UNIT DETERMINATION

█ The Board has been given the responsibility for determining the appropriate unit by section 9(b) of the National Labor Relations Act.[2] After the Board has established the appropriate bargaining unit, the matter is be-

yond the power of review of the courts, unless the unit was unreasonably or arbitrarily constituted. Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); May Department Stores Co. v. NLRB, 326 U. S. 376, 380, 66 S.Ct. 203, 90 L.Ed. 145 (1945); Retail, Wholesale, & Department Store Union v. NLRB, 128 U.S. App.D.C. 41, 44–45, 385 F.2d 301, 305 (1967). As the Supreme Court has so appropriately stated it, the rule is that the determination of the appropriate unit

[I]s one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed. While we do not say that a determination of a unit of representation cannot be so unreasonable and arbitrary as to exceed the Board's power, we are clear that the decision in question does not do so. That settled, our power is at an end.

Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491–492, 67 S.Ct. 789 (1947).

██ After familiarizing itself thoroughly with the respondent's business, employees, and method of operation, the Board made a unit determination consistent with established precedent in the nursing home industry. (Decision and Direction of Election, App. 33 n.2) We note that the appropriateness of the unit was stipulated by the parties except as to the categories of admissions clerk, switchboard operator, and medical secretary. As to those categories it was only necessary for the Board to determine whether they could properly be deemed office clerical employees, for persons in that category have traditionally been placed in separate bargaining units from production, maintenance, and operating

2. Section 9(b) provides in pertinent part: The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this [Act], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof. * * * 29 U.S.C. § 159(b) (1964).

personnel.[3] The Board had substantial reasons for determining that the employees in the three challenged categories were office clerical employees. It was found that the medical secretary is hourly rated and that she works normal daytime office hours under the direct supervision of the vice-president and secretary of the company at a duty station in the office.[4] The five switchboard operators were found to work normal eight hour shifts at the counter in the main lobby, with no interchange of duties with those stipulated to be in the unit.[5] Finally, the three admissions clerks were found to perform the essentially clerical function of interviewing patients who seek admission and recording admission data on duplicate file cards, with no interchange of duties with housekeeping, maintenance or patient-care employees.[6] Accordingly, we find that the Board's decision in this regard is supported by substantial evidence and is free of arbitrary or irrational determination; we therefore affirm the Board's unit determination.[7]

## II. OBJECTIONS TO PRE-ELECTION CONDUCT

■ Respondent also challenged the validity of the election and resulting designation of the bargaining unit on the basis of the Union's pre-election conduct. *See* note 1, *supra*. We recently reaffirmed our opinion that the election machinery which Congress has entrusted to the Board must be left for the most part to that body's expertise and discretion. International Bhd. of Elec. Workers v. NLRB, 135 U.S.App.D.C. 197, 417 F.2d 1144 (June 5, 1969), cert. denied *sub nom.* Presto Mfg. Co. v. NLRB, 396 U.S. 1004, 90 S.Ct. 556, 24 L.Ed.2d 496 (Jan. 13, 1970). We recognized therein that the "control of the election proceeding, and the determination of the steps necessary to conduct that election fairly [are] matters which Congress entrusted to the Board alone." NLRB v. Waterman Steamship Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940). In making that determination, which "should not be lightly set aside," Liberal Market, Inc., 108 N.L.R.B. 1481, 1482 (1954), the Board must follow the guidelines which it laid down for itself in Hollywood Ceramics Co., 140 N.L.R.B. 221, 224 (1962), which we cited with approval in the *International Brotherhood of Electrical Workers* case. That test requires essentially that

an election should be set aside only where there has been a misrepresenta-

---

3. While such a separation was not made in University Nursing Home, Inc., 168 N.L.R.B. No. 53 (1967), the unified grouping was made pursuant to agreement of the parties in that case. A separation parallel to those made in other industries was made in Butte Medical Properties, 168 N.L.R.B. No. 52 (1967), where, as in this case, there was no agreement to an overall unit. We think the Board's distinction of the cases on the ground of agreement of the parties versus contention between the parties is reasonable.

4. App. 33 n.2.

5. App. 34 n.2. It was noted that in most industries switchboard operators are traditionally grouped separately for collective bargaining purposes from production, maintenance and operating personnel. *See* Western Gear Corp., 160 N.L.R.B. 272 (1966); Newark Electronics Co., 131 N.L.R.B. 553 (1961); Pine State Creamery Co., 130 N.L.R.B. 892

(1961); Mergenthaler Linotype Co., 89 N.L.R.B. 686 (1950).

6. App. 34 n.2. *See* Shannon & Luchs and Andrews Manor Associates, 166 N.L.R.B. No. 122 (1967); Shannon & Luchs, Agents for Capitol Park One, Inc., 162 N.L.R.B. 1381 (1967); *cf.* The Mensch Corp., 159 N.L.R.B. 156 (1966).

7. The respondent contends that it was excused from the obligation of bargaining by the fact that the Board left undecided the exclusion of the admissions clerks from the unit, even though they were allowed to vote subject to challenge. The Board has often refused to pass on challenges when the challenged votes could not affect the outcome of the election; we know of no cases which hold that a bargaining order should not be enforced because of unresolved challenges. *See* NLRB v. A. J. Tower Co., 329 U.S. 324, 327 n.3, 67 S.Ct. 324, 91 L.Ed. 322 (1946).

tion or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party * * * from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election. * * * [A]mbiguities, like extravagant promises, derogatory statements about the other party, and minor distortions of some facts, frequently occur in communication between persons. *But even where a misrepresentation is shown to have been substantial, the Board may still refuse to set aside the election if it finds upon consideration of all the circumstances that the statement would not be likely to have had a real impact on the election.*

140 N.L.R.B. at 224 (emphasis added). *See* United Steelworkers of America v. NLRB, 129 U.S.App.D.C. 260, 263, 393 F.2d 661, 664 (1968). This rule simply recognizes the basic truth that union elections are often not conducted under ideal conditions, that there will be minor (and sometimes major, but realistically harmless) infractions by both sides, and that the Board must be given some latitude in its effort to "balance the right of the employees to an untrammeled choice, and the right of the parties to wage a free and vigorous campaign." 140 N.L.R.B. at 224.

■■■■ The Supplemental Decision and Certification of May 2, 1968, dealt with each of the objections raised by respondent. (App. 49–53.) [8] The Regional Director considered the objections and gave reasons for rejecting each of them; we find substantial evidence in the record to indicate that the Board properly applied the criteria it had established

for itself in that the actions complained of could not reasonably have been expected to have a significant impact on the outcome of the election.

## III. THE SECTION 8(a) (5) PROCEEDING

Having found the unit determination proper and respondent's objections to the election unpersuasive, we turn our attention to the section 8(a) (5) proceeding and the issues raised thereunder. Our determination of these issues rests on the soundness of the summary judgment procedure used by the trial examiner and the concomitant denial of a hearing on the issues raised by respondent.

### A. *The Denial of a Hearing*

In his decision on these issues the trial examiner granted the motion for summary judgment on the ground that it was not necessary to hold a hearing and relitigate issues which had been, or could have been, litigated in the representation proceeding, unless it was shown that there was newly discovered or previously unavailable evidence. (App. 72.) This theory was recognized by the Supreme Court in Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), wherein the Court noted that "[t]he unit proceeding and [the] complaint on unfair labor practices are really one." 313 U.S. at 158, 61 S.Ct. at 915. Having found full participation in the representation hearing by the petitioners in that case, the Court held that "[i]f the Company * * * desired to relitigate this issue, it was up to them to indicate in some way that the evidence they wished to offer was more than cumula-

---

8. Respondent asserts that it was error for the Board to rule on the objections to the pre-election conduct of the union in the absence of a hearing on those issues raised in respondent's objection. Although the respondent filed objections to the election and an opposition to the motion for summary judgment, nowhere did it request a hearing on the issues it

had raised. (App. 74–75.) Under these circumstances we cannot say that the Board erred in not requiring a hearing *sua sponte.* The company seemed satisfied at the time to have the issues decided on the record; it therefore waived its right, if it had a right, to a hearing on those issues.

tive. *Nothing more appearing, a single trial of the issue was enough.*" 313 U.S. at 162, 61 S.Ct. at 917 (emphasis added).

When the Board delegated the hearing of representation questions and the determination of proper units for election to its Regional Directors in 1961, section 102.67(f) of the Board's rules was promulgated to continue the prior practices as follows:

Failure to request review [of the Regional Director's determination] *shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding.* Denial of a request for review shall constitute an affirmance of the regional director's action which *shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding.*

29 C.F.R. § 102.67(f) (1969) (emphasis added). On the basis of the *Pittsburgh Plate Glass* case and the above-quoted rule, this court has said that "[u]pon the finding of an unfair labor practice for refusing to bargain with the union after its post-election certification, the company [can] appeal to the courts and at that time test the validity of the earlier unit determination.⁹" Amalgamated Clothing Workers of America v. NLRB, 124 U.S.App.D.C. 365, 369, 365 F.2d 898, 902 (1966). We then said that when an unfair labor practice proceeding is brought which is "related" to the representation hearing, relitigation of common issues will be disallowed, stating that:

Where a company is charged with refusal to bargain with a union certified after election, the proceeding is sufficiently "related" to the representation proceeding to preclude relitigation of such common issues as the scope of the appropriate unit and employees therein.

124 U.S.App.D.C. at 371, 365 F.2d at 904.

■■ This Board rule against relitigation of issues which could have been previously aired but for the failure of the company to request review of the Regional Director's action is eminently reasonable. While this rule does not apply directly to the current case because there was a request for review of the action in this case, the policy behind the rule is applicable and we hold that when there has been a previous hearing on the identical issues, or when there has been no hearing due to a waiver thereof by the respondent, there is no requirement that a hearing be held during the unfair labor practice proceeding. It is clear that respondent here had the opportunity to litigate all relevant issues previously; there was a hearing on the unit determination, and respondent waived any rights it may have had to a hearing on the election issue. It was therefore not a denial of due process to refuse to hold a hearing in the unfair labor practice proceeding, absent a showing of new or previously unavailable evidence.¹⁰ *See* Amalgamated Clothing Workers of

---

9. Section 9(d) of the National Labor Relations Act provides that the reviewing court, on appeal of a finding of an unfair labor practice, will have the proceedings at the representation hearing before it as part of the record on appeal. 29 U.S.C. § 159(d) (1964).

10. We have examined the cases cited by respondent for the proposition that a hearing was required; we find those cases inapposite, for each involves either a situation in which the opportunity to litigate the issues fully at a representa-

tion hearing did not exist, or a situation in which there was newly discovered or previously unavailable evidence. Such is not the case here. *See* NLRB v. Ideal Laundry & Dry Cleaning Co., 330 F.2d 712 (10th Cir. 1964); NLRB v. Lord Baltimore Press, Inc., 300 F.2d 671 (4th Cir. 1962); NLRB v. Dallas City Packing Co., 230 F.2d 708 (5th Cir. 1956); NLRB v. Poinsett Lumber & Mfg. Co., 221 F.2d 121 (4th Cir. 1955); NLRB v. West Texas Utilities Co., 214 F.2d 732 (5th Cir. 1954); NLRB v. Sidran, 181 F.2d 671 (5th Cir. 1950).

America v. NLRB, 137 U.S.App.D.C. ——, 424 F.2d 818 at 829–830 (Feb. 2, 1970).

B. *The Summary Judgment Procedure*

The Board has recently instituted a summary judgment procedure for handling unfair labor practice proceedings when there are no issues of fact involved. The Seventh Circuit has recently held that section 10 of the Act "cannot logically mean that an evidentiary hearing must be held in a case where there is no issue of fact." Macomb Pottery Co. v. NLRB, 376 F.2d 450, 452 (1967).

By extending this device, traditionally used by the courts to resolve cases when there is no outstanding issue of fact, to proceedings before the National Labor Relations Board, that body has merely recognized the importance of expediting the determinations which come before it. While it would not be proper for the Board to grant summary judgment in a case wherein the respondent had not had ample opportunity to litigate fully all relevant issues, it would be irresponsible for the Board to waste costly administrative time needlessly when all of the factual issues have previously been resolved. Occasionally the Board may make a mistake in its determination that all the issues are clearly drawn, as it has done in the cases cited by respondent.[11] When that occurs, the reviewing court will recognize this fact immediately and send the case back for an evidentiary hearing. Thus the interests of due process are protected through the vehicle of judicial review.[12]

■ Where appropriate, the summary judgment procedure will have the laudible effect of cutting down the time a bad-faith respondent will be able to avoid compliance with the law through delaying tactics. We therefore agree with the policy underlying the procedure and uphold its use in cases, such as the current one, in which the respondent has litigated or has had an opportunity to litigate all relevant issues of fact, and the only determinations remaining to be made in the unfair labor practice proceeding are questions of law for the determination of the Board.

## IV. CONCLUSION

For the foregoing reasons we hold that the objections of the respondent are without merit and that the order of the National Labor Relations Board will be enforced.

So ordered.

11. NLRB v. Monroe Auto Equip. Co., 406 F.2d 177 (5th Cir. 1969); NLRB v. Genesco, Inc., 406 F.2d 393 (5th Cir. 1969); Bausch & Lomb, Inc. v. NLRB, 404 F. 2d 1222 (2d Cir. 1968); NLRB v. Smith Indus., Inc., 403 F.2d 889 (5th Cir. 1968).

12. As our sister circuit recently noted:
The summary judgment procedure in no way impaired the company's right to judicial review of the crucial issue in the unfair labor practice proceeding * * *. This is because the record of the hearing in the representation proceeding must be filed with the court together with the record of the unfair labor practice proceeding. The board's summary judgment procedure is new, but its validity has been decided or assumed by every circuit that has considered it.

NLRB v. Union Bros., Inc., 403 F.2d 883, 887 (4th Cir. 1968). Accord, NLRB v. Puritan Sportswear Corp., 385 F.2d 142 (3d Cir. 1967); NLRB v. Tennessee Packers, Inc., 379 F.2d 172, 176–177, 179–180 (6th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); Neuhoff Bros., Packers, Inc. v. NLRB, 362 F.2d 611, 613 (5th Cir. 1966), cert. denied, 386 U.S. 956, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967).