**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The NEWTON–NEW HAVEN COMPANY, Respondent.**

No. 59, Docket 74–1286.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 1974.

Decided Nov. 25, 1974.

Michael S. Wolly, Atty., NLRB, Washington, D.C. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate . Gen.

**1036**

Counsel, Elliott Moore, Deputy Associate Gen. Counsel, NLRB), for petitioner.

Sidney A. Coven, Boston, Mass. (Lepie & Coven, Warren D. Atlas, Boston, Mass., on the brief), for respondent.

Before KAUFMAN, Chief Judge, ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The National Labor Relations Board (Board), pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) (Act), has applied to this court for enforcement of its order of December 12, 1973 against the Newton-New Haven Company (Company), requiring it to cease and desist from refusing to bargain. The decision and order of the Board are reported in 207 N.L.R.B. No. 116 (1973).

The Regional Director of the Board, on the basis of a representation petition filed by the United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO–CLC (Union), ordered an election to be held on April 13, 1973 in an appropriate unit of the Company's production and maintenance workers. Of some 183 eligible voters in the unit, 169 cast their ballots, with 87 voting for the Union and 82 against the Union. On April 19th, the Company filed five objections with respect to the conducting of the election, all of which were denied by the Regional Director. The Company then filed an exception with the Board seeking review of the ruling on its fourth objection, which alleged that a representative of the Union acting as an official election observer engaged in prohibited conversations and improper electioneering during the period of the election while in the course of his official duties. The Board denied the request for review on June 11, 1973. The Company then refused to bargain with the Union, and, on December 12, 1973, the Board issued a cease and desist order. The denial of the request for review was rendered by a panel composed of only one Board member and two staff assistants. The Company urges here that the Board abused its discretion by failing to set aside the election allegedly tainted by the activities of the Union's observer and by failing to order an evidentiary hearing with respect to this objection. The Company also urges that the decision of the Board was invalid and should be set aside because it was in violation of the quorum requirements of the Act. The petition for enforcement of the Board's order is granted in full.

**I**

The Company has here refused to bargain with the Union which has been certified by the Board as the exclusive bargaining representative of the employees in the appropriate unit. This refusal of the Company constitutes a violation of section 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) & (5), unless the Company can shoulder the "heavy burden" of establishing that the Board abused its discretion in certifying the election. Polymers, Inc. v. NLRB, 414 F.2d 999, 1004 (2d Cir. 1969), cert. denied, 396 U.S. 1010, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970). We have said that "[t]he conduct of representation elections is the very archetype of a purely administrative function, with no *quasi* about it, concerning which courts should not interfere save for the most glaring discrimination or abuse." NLRB v. Olson Bodies, Inc., 420 F.2d 1187, 1189 (2d Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971). On the question of evidentiary hearings this court has also indicated that "[h]earings need not be held on objections to representation elections unless by prima facie evidence the moving party presents substantial and material factual issues which, if resolved in its favor, would warrant setting aside the election." Polymers, Inc. v. NLRB, *supra*, 414 F.2d at 1004–1005 (footnote omitted).

The respondent here is fully conscious of the wide latitude entrusted to the Board in the conduct of representation elections and is aware of the heavy bur-

den it has assumed in attempting to persuade this court that an election must be overturned. It argues, however, that the conduct of Juan Vega, the Union representative at the afternoon and evening voting periods on April 13, 1973, constitutes a proper basis for setting aside the election or at least mandates the conducting of a full evidentiary hearing. Respondent relies principally upon Milchem, Inc., 170 N.L.R.B. 362 (1968), where the Board announced an admittedly strict per se approach to the electioneering problem. While we recognize that the result in the election here was close and that a few more votes would have changed the outcome, we must agree with the Board that there is nothing in the record before us, assuming the veracity of the affidavits of the Company witnesses, which would bring this case within the *Milchem* rule.

On the afternoon of the election, Vega, accompanied by the Company representative, visited the Die Casting Department to advise foremen that employees should be released to vote. While Vega improperly spoke to individual workers for about 5 minutes, his conversations were not overheard, or were with employees ineligible to vote, or were simply to remind them to vote without any indication as to how they should vote. While he was overheard speaking briefly in Spanish, which the Company representative did not understand, it is significant, as found by the Regional Director, that at least one foreman who spoke Spanish and was interviewed was available to the Company to ascertain the content of the conversation.

During the evening session of voting, Vega was observed at the door of the polling place, the cafeteria, but according to the affidavit of the Company observer, his only conversation was with an employee who had already voted. The employee was advised to leave and he did. Vega returned to the cafeteria but was later observed wandering down the hallway outside the polling place.

He eventually returned permanently to the cafeteria, but only at the request of the NLRB official supervising the election.

While Vega was hardly an ideal observer, there is no proof here and no offer of proof that Vega ever suggested to any employee how he should vote. In *Milchem*, the Board announced its strict rule that any conversation, irrespective of its tenor, is suspect and can constitute an abuse which will avoid the election. However, the rationale of *Milchem* is to eliminate the last-minute advantage given a party who intrudes upon the privacy of the employee while he is in the polling place or is standing on line to vote. There is no indication here that Vega conducted any conversation with anyone in the polling place or polling area except perhaps to speak to one employee who had already voted.

*Milchem* involved activity by a party to the election and the rule was extended by the Board in General Dynamics Corp., 181 N.L.R.B. 870 (1970) to official representatives of the parties. We do not interpret *General Dynamics* to extend the polling area to a plant's production areas. As Appendix A in that case establishes, the Union observer there stationed himself between the observers' table and the voting booth. In his own testimony he admitted that he had misled voters by incorrectly pointing out to inquiring employees the position of a rival union's place on the ballot. 181 N.L.R.B. at 875. The Board has elsewhere limited the *Milchem* rule to polling place conversations. Harold W. Moore & Son, 173 N.L.R.B. 1258 (1968); Marvil Int'l Security Serv., Inc., 173 N.L.R.B. 1260 (1968).

█ We conclude that, in view of the broad latitude vested in the Board over this purely administrative activity, it would be inappropriate for this court to extend the metes and bounds of *Milchem* to cover conversations outside the designated polling area. We find no abuse of discretion here on the part of the Board and no specific evidence which would

warrant an evidentiary hearing. Bausch & Lomb Inc. v. NLRB, 404 F.2d 1222, 1226 (2d Cir. 1968).

## II

The Board here has admitted that the Company's request for a review of the decision of the Regional Director upholding the validity of the election was decided by a panel consisting of one Board member and two staff attorneys, a practice which this court in KFC National Management Corp. v. NLRB, 497 F.2d 298 (2d Cir. 1974) held to be a violation of section 3(b) of the Act, 29 U.S.C. § 153(b). The Company now argues that enforcement should be denied because of the violation of the quorum requirements and requests instead a remand to the Board in accordance with the decision in KFC National Management Corp. We decline to give the decision in that case retroactive effect.

The Company here did not raise the question of the adequacy of the Board's review procedure either in the representation proceeding or in the subsequent unfair labor practice case. The Board sought enforcement of its order in this court on March 1, 1974 and filed its certified list on April 11, 1974 and its brief on May 20, 1974. The Company first raised the issue with the Board by letter dated June 4, 1974.

■■■ As this court pointed out in KFC, "objections to administrative procedures must be timely made with the agency," and this rule is "intended to preclude parties from raising their objections for the first time in the reviewing courts." 497 F.2d at 300 n.1, and cases cited therein. Moreover, section 10(e) of the Act, 29 U.S.C. § 160(e), precludes court consideration of objections not urged before the Board unless the failure is excused by "extraordinary circumstances." The only circumstance urged here is that KFC was decided on May 8, 1974, after the administrative proceedings had terminated.[1] However, in United States v. Tucker Lines, Inc., 344 U.S. 33, 73 S. Ct. 67, 97 L.Ed. 54 (1952), the Supreme Court held that, in seeking a statutory review in the district court of the Interstate Commerce Commission's denial of an application for a certificate of convenience, Tucker could not appropriately raise for the first time in the court the issue that the examiner presiding at the hearing was not appointed pursuant to the Administrative Procedure Act. Tucker's objection was prompted by a decision of the Court in Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345 (1951) (per curiam), decided after Tucker's administrative proceeding but before the federal court procedure. In Tucker, the Court disposed of the objection by noting:

> Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice. 344 U.S. at 37, 73 S.Ct. at 69.

That consideration is controlling here.[2]

---

1. Counsel for the respondent also argues that the Board practice of utilizing staff assistants in representation cases came as a great surprise and was not known to him, although he was a seasoned labor attorney with ten years' experience as a field attorney for the Board. However, in KFC, supra, this court noted that a law review article in 1968 had described the practice. 497 F.2d at 301 n. 4. Moreover, the Board's decision in KFC, wherein the challenge had been made in the administrative proceeding, was filed on June 29, 1973 and was publish-ed on August 13, 1973 (83 LRRM 1534), long before the enforcement procedure was initiated in this court.

2. Our decision that KFC should not here be applied retrospectively is supported by two further considerations. Although the enforcement of the three-member board rule in that case did not ignore the effect which its application would have in insuring the reliability of NLRB decisionmaking, the court recognized that Board practice had been to give "proxies" only in routine cases. 497

In any event, the Company has already moved this court for the remand now sought and the motion was denied by order dated August 13, 1974. Since no opinion was written at the time, we deemed it appropriate to give some explication of our position in view of the large number of representation contests before the Board and the significant and unjustified administrative burden which would be placed upon the Board were we to rule otherwise.

Petition for enforcement granted.

F.2d at 301. Prospective application would thus result in enforcement of unreliable orders only in exceptional cases. It is obvious, however, that the claim of electioneering here is little more than routine.

Moreover, some weight should be given to the reliance of the Board on the legality of its practice, which at least arguably seemed supported by United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), and Eastern Airlines, Inc. v. CAB, 271 F.2d 752 (2d Cir.), cert. denied, 362 U.S. 970, 80 S.Ct. 954, 4 L.Ed.2d 901 (1959).