475 F.2d 1316
 82 L.R.R.M. (BNA) 2746, 155 U.S.App.D.C. 47,
70 Lab.Cas. P 13,453
 BRICKLAYERS, MASONS AND PLASTERERS INTERNATIONAL UNION OF
AMERICA, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BRICKLAYERS, STONE MASONS, MARBLE MASONS, TILE SETTERS AND
TERRAZZO WORKERS, LOCAL UNION NO. 1 OF TENNESSEE.
 Nos. 72-1117, 72-1254.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 1, 1972.
Decided March 1, 1973.
 
 Laurence Gold, Washington, D. C., for petitioner in No. 72-1117 and respondent in No. 72-1254. J. Albert Woll, Washington, D. C., also entered an appearance for petitioner in No. 72-1117 and respondent in No. 72-1254.
 Avrum M. Goldberg, Atty., National Labor Relations Board, with whom Marcel Mallet-Prevost, Asst. General Counsel, and Joseph E. Mayer, Atty., National Labor Relations Board were on the brief for petitioner in No. 72-1254 and respondent in No. 72-1117.
 Before FAHY, Senior Circuit Judge, and WRIGHT and WILKEY, Circuit Judges.
 FAHY, Senior Circuit Judge:
 
 
 1
 A jurisdictional dispute arose between the tile setters and bricklayers of a local union, the Bricklayers, Stone Masons, Marble Masons, Tile Setters and Terrazzo Workers Local Union No. 1 of Tennessee, an affiliate of the Bricklayers, Masons and Plasterers International Union of America (hereinafter referred to as the Unions). The dispute concerned the right to install acid proof paver floors for the Shelby Marble & Tile Co., a contractor employed in construction at the Joseph Schlitz Brewing Co., Memphis, Tennessee.
 
 
 2
 The employer, Shelby, filed an unfair labor practice charge under the National Labor Relations Act, as amended, 29 U.S.C. Sec. 151 et seq. (1970), that the Unions had violated section 8(b)(4)(ii)(D) of the Act[1] by engaging in prohibited activity with an object of forcing or requiring Shelby to assign the work to the bricklayers rather than to the tile setters. Shelby had assigned the work to the latter.
 
 
 3
 *****
 
 
 4
 * * *
 
 
 5
 *****
 
 
 6
 * * *
 
 
 7
 The Board first initiated a proceeding to resolve the jurisdictional dispute, as required by section 10(k) of the Act.[2] Upon the basis of the evidence adduced at the hearing the Board itself, without a recommended decision by the Trial Examiner, which was requested by the Unions, decided the jurisdictional dispute in favor of the tile setters. The prohibited activity continuing an unfair labor practice complaint was issued against the Unions. Since no additional evidence was sought to be introduced respecting the prohibited activity the Board granted its General Counsel's motion for summary judgment that the Unions were in violation of section 8(b)(4)(ii)(D) of the Act "by attempting to force or require the Employer to assign the work . . . to bricklayers . . . ." An appropriate cease and desist and notice-posting order was issued. The Board petitions under section 10(e) of the Act for enforcement of its order and the Unions petition under section 10(f) for its review. We grant the petition of the Board.
 
 
 8
 * The Unions contend that the Board erred in deciding the jurisdictional dispute without a recommended decision of the Trial Examiner who received the evidence at the section 10(k) hearing. With certain stated exceptions the Administrative Procedure Act (A.P.A.) requires such a recommended decision "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing . . . .", 5 U.S.C. Sec. 554(a), "[w]hen the agency makes the decision without having presided at the reception of the evidence . . . ." 5 U.S.C. Sec. 557(b). An adjudication is defined as "agency process for the formulation of an order," 5 U.S.C. Sec. 551(7).
 
 
 9
 From the foregoing it appears that, except as to certain rules not now relevant,[3] only if a section 10(k) determination is an adjudication within the meaning of section 554 would a recommended decision have been required.[4] We hold that a determination in a section 10(k) proceeding is not an adjudication within the meaning of 5 U.S.C. Sec. 554. The term, it is true, is used ordinarily in contrast to "rulemaking":
 
 
 10
 "Adjudication" has not been defined generally in statutes, except by implication or reference to particular subjects and orders. However, since there are only two basic types of administrative justice-rulemaking and adjudication-the words "other than rulemaking" serve to make the essential distinction.[5]
 
 
 11
 Nevertheless, it does not encompass all forms of agency action other than rulemaking. If the action in question does not lead to a "final disposition" by the agency, it may not be an adjudication.[6] Moreover, while there is an explicit exclusion of a "certification of worker representatives"[7] from the requirement of a recommended decision, indicating that otherwise it might be considered an adjudication, this exclusion may have been due simply to recognition that such certifications, which "rest so largely upon an election or availability of an election,"[8] had previously been held by the Supreme Court not to be adjudicatory like a final order of the Board in an unfair labor practice proceeding.[9] American Federation of Labor v. NLRB, 308 U.S. 401, 408-412, 60 S.Ct. 300, 84 L.Ed. 347 (1940).[10] That decision it is true was only that a certification of representatives was not an "order" reviewable under the particular statutory scheme of the Labor Act, but it nevertheless has some relevance to our problem because of the similarity between the nature of a section 9 representation proceeding and a proceeding under section 10(k). An intermediate report by the examiner is not required in the former for reasons applicable to the latter:
 
 
 12
 The need for intermediate reports, to the extent that they provide a method for obtaining the judgment of the trial examiner on issues of fact dependent for their resolution upon the demeanor of witnesses, is rarely present in a representation proceeding. The evidentiary material relates to economic facts such as the nature of the employer's business, the duties of certain employees, and the history of collective bargaining in the plant. Issues of credibility are rarely present.[11]
 
 
 13
 For comparable reasons the Board adopted the same practice in section 10(k) hearings shortly after that section followed section 9 into the Act, subsequent to the enactment of the A.P.A.[12] :
 
 
 14
 The Board adopted such procedure because the decision in the proceedings under Section 10(k) is a preliminary administrative determination made for the purpose of attempting to resolve a dispute within the meaning of that section; the unfair labor practice itself is litigated at a subsequent hearing before a Trial Examiner in the event the dispute remains unresolved. It is to the subsequent adversary hearing, which leads to a final Board adjudication, that Section 8 [section 557] of the Administrative Procedure Act applies.
 
 
 15
 National Union of Marine Cooks and Stewards (Irwin Lyons Lumber Co.), 83 N.L.R.B. 341 (1949).
 
 
 16
 In NLRB v. Plasterers' Union No. 79, 404 U.S. 116, 122, n. 10, 92 S.Ct. 360, 365, 30 L.Ed.2d 312 (1971) the Supreme Court appraised section 10(k) in like manner:
 
 
 17
 The Sec. 10(k) determination is not binding as such even on the striking union. If that union continues to picket despite an adverse Sec. 10(k) decision, the Board must prove the union guilty of a Sec. 8(b)(4)(D) violation before a cease-and-desist order can issue. The findings and conclusions in a Sec. 10(k) proceeding are not res judicata on the unfair labor practice issue in the later Sec. 8(b)(4)(D) determination. International Typographical Union, 125 N.L.R.B. 759, 761 (1959). Both parties may put in new evidence at the Sec. 8(b)(4)(D) stage, although often, as in the present cases, the parties agree to stipulate the record of the Sec. 10(k) hearing as a basis for the Board's determination of the unfair labor practice. Finally, to exercise its powers under Sec. 10(k), the Board need only find that there is reasonable cause to believe that a Sec. 8(b)(4)(D) violation has occurred, while in the Sec. 8(b)(4)(D) proceeding itself the Board must find by a preponderance of the evidence that the picketing union has violated Sec. 8(b)(4)(D). International Typographical Union, 125 N.L.R.B. 759, 761, n. 5 (1959).
 
 
 18
 The non-adjudicatory character of the section 10(k) determination is indicated by the relationship between a jurisdictional dispute, a decision with respect to it, and the relevant section 8(b)(4)(ii)(D) unfair labor practice. The threat to or coercion of the employer which gives rise to the charge of the unfair labor practice is sought by Congress through section 10(k) to be ended so that the work can proceed. Voluntary settlement is encouraged. If this does not eventuate, hope remains that the ensuing determination of the dispute by the Board will solve the matter. If it is accepted by the union which has been charged with violating section 8(b)(4)(ii)(D), no unfair labor practice complaint issues against the union. Though acceptance of the Board's solution is not required, it is persuasively encouraged because, otherwise, a complaint does issue. Then the question is whether the prohibited conduct has continued, not whether the Board's determination is complied with.
 
 
 19
 The Supreme Court has explained the matter as follows:
 
 
 20
 But the Sec. 10(k) decision standing alone, binds no one. No cease-and-desist order against either union or employer results from such a proceeding; the impact of the Sec. 10(k) decision is felt in the Sec. 8(b)(4)(D) hearing because for all practical purposes the Board's award determines who will prevail in the unfair labor practice proceeding. If the picketing union persists in its conduct despite a Sec. 10(k) decision against it, a Sec. 8(b)(4)(D) complaint issues and the union will likely be found guilty of an unfair labor practice and be ordered to cease and desist. On the other hand, if that union wins the Sec. 10(k) decision and the employer does not comply, the employer's Sec. 8(b)(4)(D) case evaporates and the charges he filed against the picketing union will be dismissed. Neither the employer nor the employees to whom he has assigned the work are legally bound to observe the Sec. 10(k) decision, but both will lose their Sec. 8(b)(4)(D) protection against the picketing which may, as it did here, shut down the job. The employer will be under intense pressure, practically, to conform to the Board's decision. This is the design of the Act; Congress provided no other way to implement the Board's Sec. 10(k) decision. (Footnote omitted.)
 
 
 21
 NLRB v. Plasterers' Union No. 79, supra, 404 U.S. 126-127, 92 S.Ct. at 367.
 
 
 22
 The scheme for and consequence of a section 10(k) hearing thus are not adjudicatory, notwithstanding that in reaching its determination the Board resolves a factual issue. That may be the case also in a section 9 representation proceeding but would not for that reason require an intermediate report of the hearing officer, even were such a certification not explicitly excepted from section 554 of the A.P.A.
 
 
 23
 The Unions point out that the protections of the A.P.A. are to be given generous scope, with limitations not lightly to be implied, citing Abbott Laboratories v. Gardner, 387 U.S. 136, 139-141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court was concerned there with access to the courts for judicial review of final agency action, as to which the Court said, "a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." 387 U.S. at 140, 87 S.Ct. at 1511. This does not help the Unions. Other considerations bear upon our present problem of statutory construction. In the first place there is need, obviously, for as expeditious a resolution of the jurisdictional dispute as is reasonably possible. We must also give consideration to the deep-seated concern Congress had with delays caused by judicial intervention in representation cases in pre-Wagner Act days. See American Federation of Labor v. NLRB, supra. Furthermore, we are faced with an unusually impressive administrative interpretation supporting the conclusion we reach, first adopted by the Board as long ago as 1949 in National Union of Maritime Cooks and Stewards (Irwin Lyons Lumber Co.), supra, repeated in 1959 in Local 8, Longshoremen (General Ore, Inc.), 124 N.L.R.B. 626, and until now, we believe, not questioned by courts or Congress. This interpretation of section 10(k) by the Board is entitled to great weight. United States v. American Trucking Assns., Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). Cf. United States v. Florida East Coast Ry. Co., supra, 410 U.S. 224, 236, n. 6, and dissenting opinion at 246, 93 S.Ct. 810, 35 L.Ed.2d 223. It is noteworthy also that in neither NLRB v. Plasterers' Union, No. 79, supra, nor NLRB v. Radio & Television Broadcast Engineers Union No. 1212, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961),[13] was there a hearing officer's recommended decision in the section 10(k) proceedings there involved, although, we must add, no question in that respect was raised.
 
 
 24
 It can well be argued that the result of the section 10(k) hearing has so formidable a bearing upon the unfair labor practice which might ensue that an intermediate finding of the hearing officer should be required, especially where, as here, in concluding that the parties had not agreed to a voluntary means of settlement which would have precluded a Board determination of the dispute, credibility of the witnesses was a factor. Nevertheless, unless the A.P.A. so required, a trial examiner's recommended decision was not essential, for the Constitution did not mandate it as a condition to the resolution of the factual issue by the Board. NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); Morgan v. United States, (Morgan II), 304 U.S. 1, at 26, 58 S.Ct. 773, 82 L.Ed. 1129 (1938).[14] In its discretion we doubt not the Board could require such a procedure, but if so we would find no abuse of discretion in the present case. Cf., United States v. Florida East Coast Ry. Co., supra, 410 U.S. 224, 236, n. 6, 93 S.Ct. 810, 35 L.Ed.2d 223.
 
 II
 
 25
 We have reviewed the conflicting evidence as to whether all parties had agreed to a means of voluntary settlement of the jurisdictional dispute. This issue having been raised, its resolution by the Board was ancillary to the exercise of its power to determine the jurisdictional dispute under section 10(k).[15] The evidence is not so clear one way or the other that the court should substitute a judgment of its own rather than accept the conclusion reached by the Board; and the need for the Board to resolve that issue in order to go further under section 10(k) did not change the character of the proceedings so as to bring them within section 554 of the A.P.A. as being adjudicatory. Their non-adjudicatory character is drawn from their over-all purpose and effect, rather than from the need for the resolution of such a factual issue in a particular case.
 
 III
 
 26
 When, as at present, the section 10(k) determination does not end the matter and an unfair labor practice complaint issues, the proceedings become adjudicatory. Should a factual issue be involved as to the unfair labor practice, the usual intermediate decision of the Trial Examiner would be required under the A.P.A., section 554(c)(2). Here, however, the prohibited conduct constituting the unfair labor practice was not denied. The only factual dispute was whether there had been an agreed method of settlement. This had been resolved by the Board in the section 10(k) proceedings. To relitigate it, as the Unions sought, would not have been consistent with the plan of the statute. Nor does that plan require the Board, after the unfair labor practice complaint has issued, to require the evidence upon which it has rendered its section 10(k) decision to be reconsidered by a Trial Examiner who would then recommend a decision.
 
 
 27
 The question whether there was a voluntary agreement on a method of settlement having been resolved by the Board in the section 10(k) proceeding, the Board's resolution remained subject only to judicial review, unless there were occasion for the Board to open the matter for reconsideration. Such an occasion did not here arise beyond consideration of the May 18 letter, a matter disposed of in Part IV of this opinion. Accordingly, we do not fault the Board in granting its General Counsel's motion for summary judgment, for, as above stated, our review leads to no basis for upsetting the resolution by the Board of the voluntary settlement issue.
 
 IV
 
 28
 An additional matter is considered.
 
 
 29
 When the Board made its section 10(k) decision a timely petition for rehearing was filed by the Unions, and, also, a motion to supplement the record. This motion included a request that a letter from the Company to the International Executive Board of the Union be admitted in evidence. The purport of the motion was that the letter supported the Unions' position that Shelby had agreed to a voluntary means of settlement of the dispute by the hierarchy of the International. In denying the petition for rehearing the Board also denied the Unions' motion to admit the letter, on the ground it was not newly discovered or had been unavailable at the previous hearing. We are inclined to agree with Chairman Miller in his dissent from the Board's refusal to supplement the record by admitting the letter; but, in its ruling to the contrary the Board also stated that this "supplemental exhibit does not, in our opinion, either expressly or impliedly authorize Respondent International to make a binding settlement of the dispute." It seems to us that this clearly demonstrates that the Board considered the letter, and decided it made no difference in its determination of the issue of voluntary agreement to settle,[16] a determination which as we have stated we do not feel justified in overruling. If there were error in not admitting the letter, the requirement that "due account shall be taken of the rule of prejudicial error," 5 U.S.C. Sec. 706, we think precludes granting of the Unions' present petition.
 
 
 30
 The order of the Board is enforced and the petition of the Unions is denied.
 
 
 
 [1]
 29 U.S.C. Sec. 158(b)(4)(ii)(D), which provides as follows:
 (b) It shall be an unfair labor practice for a labor organization or its agents-
 (4)(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is-
 (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work: . . . .
 
 
 [2]
 29 U.S.C. Sec. 160(k), which provides as follows:
 Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.
 
 
 [3]
 I. e., rules "required by statute to be made on the record after opportunity for an agency hearing . . . ." 5 U.S.C. Sec. 553(c)
 
 
 [4]
 In case of adjudication sections 556 and 557 are to be complied with. 5 U.S.C. Sec. 554(c)(2)
 
 
 [5]
 Senate Judiciary Comm., The A.P.A. Legislative History, Sen.Doc. No. 248, 79th Cong., 2d Sess., at 14 (1946) (hereinafter cited as The A.P.A. Legislative History). See also, United States v. Florida East Coast Ry. Co., 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973)
 
 
 [6]
 The A.P.A. Legislative History, at 14, 197 and 254
 
 
 [7]
 5 U.S.C. Sec. 554(a)(6). The Senate Report in reference to the exceptions specified in 5 U.S.C. Sec. 554 stated the following:
 It should be noted that these exceptions apply only "to the extent" that the excepted subject is involved and, it may be added, only to the extent that such subjects are directly involved.
 The A.P.A. Legislative History, at 202.
 
 
 [8]
 The A.P.A. Legislative History, at 202 and 261
 
 
 [9]
 The A.P.A. was originally enacted in 1946. Act of June 11, 1946, ch. 324, 60 Stat. 237
 
 
 [10]
 Accord, NLRB v. International Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354 (1940)
 
 
 [11]
 The Attorney General's Committee on Administrative Procedure in Government Agencies, Monograph No. 5, S.Doc. No. 10, 77th Cong., 1st Sess., Pt. 5, at 35, n. 144 (1941)
 However, if an unfair labor practice charge is raised in a representation hearing, it was the practice of the Board separately to dispose of such charge in adjudicatory proceedings prior to the determination of the representation issues. Id. at 33-34. Unfair labor practice proceedings required intermediate reports by the examiners. Id. at 21.
 
 
 [12]
 Section 10(k) was added to the statute by the Act of June 23, 1947, ch. 120, 61 Stat. 149, approximately one year after the A.P.A. was enacted. See, note 9, supra
 
 
 [13]
 In NLRB v. Radio & Television Broadcast Engineers Union No. 1212, supra, there was a section 8(b)(4)(ii)(D) hearing, with an intermediate report by the examiner. 121 N.L.R.B. 1207, 1209-1213 (1958)
 
 
 [14]
 Though in employee representation cases there is sometimes, though not often, a credibility issue, Congress has not for that reason required a recommended decision of the hearing officer. See text and note 11 at p. 1319, supra
 
 
 [15]
 See, note 2, supra
 
 
 [16]
 The letter reads as follows:
 Shelby Marble & Tile Co.
 May 18, 1970
 Mr. Thomas F. Murphy, President B.M.P.I.U. of A.
 
 
 [815]
 Fifteenth Street, N. W. Washington, D. C. 20005
 Re: Schlitz Brewery-Plant #11 Memphis, Tennessee
 Dear Mr. Murphy,
 We will greatly appreciate anything you and the Executive Board are able to do to keep the installation of acid proof paving tile in the hands of the tile setters. We sincerely feel after reviewing the installation specification and the Union Constitution and By-Laws that this is, in this instance, tile setter's work.
 Further, the tile-setters in this area need this work, badly and we in turn need them to do this work for us.
 Very truly yours,
 SHELBY MARBLE & TILE COMPANY
 /S/
 Charles A. Price, Vice President CAP:hp