**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, AFL–CIO, LOCAL 433, Respondent.**

**No. 75–3261.**

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1977.

---

Charles P. Donnelly (argued), of NLRB; Washington, D.C., for petitioner.

Victor Van Bourg and David Rosenfeld (argued), of Van Bourg, Allen, Weinberg & Williams, San Francisco, Cal., for respondent.

Before DUNIWAY, CARTER, and CHOY, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This case is before the court on application of the National Labor Relations Board for enforcement of an order issued June 25, 1975, against the International Association of Bridge, Structural and Ornamental Iron-workers, AFL–CIO, Local 433 (Respondent). We enforce the order.

*Facts*

In 1973, Plaza Glass Company was hired to fabricate and install doors and windows in an apartment project in Marina del Rey, California. For the job, Plaza Glass used its own employees, who were members of the Glaziers, Glassworkers and Glass Ware-house Workers Union, Local 636 (Glaziers). Plaza Glass is a party to a collective bargaining agreement with the Glaziers by virtue of its membership in the Southern California Glass Management Association.

In January 1974, a representative of Respondent complained to Plaza Glass that the work being done should go to its members. Several threats were made against Plaza Glass by representatives of Respondent to slow down or stop the project unless its members were hired. The Glaziers took the position that reassignment of the work would be violative of the contract it had with Plaza Glass and might be grounds for picketing the job site.

Plaza Glass filed unfair labor practice charges against both unions. Believing that a jurisdictional dispute existed between the two unions, the Regional Director of the NLRB ordered a hearing to be held, pursuant to § 10(k) of the N.L.R.A.[1] The hearing was conducted in May, June and July 1974. The sole issue advanced by the Respondent at the § 10(k) proceeding was whether the Board lacked jurisdiction because the parties had voluntarily agreed to be bound by the decision of the Impartial Jurisdictional Dispute Board (the "Dispute Board"). A decision was issued by that Board on November 12, 1974. The Board found that there was reasonable cause to believe that both unions had violated § 8(b)(4)(D) of the N.L.R.A.,[2] and that all of

1. Section 10(k) (29 U.S.C. § 160(k)) provides:
   "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

2. Section 8(b)(4)(D) (29 U.S.C. § 158(b)(4)(D)), in relevant part, makes it an unfair labor practice for a labor organization or its agents "to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where . . . an object thereof is—

the parties involved had not agreed upon a method of voluntarily settling the dispute.

The Board awarded the work to the Glaziers. Respondent was given 10 days in which to notify the Regional Director of its compliance with the § 10(k) decision. Respondent did not answer, and a Board complaint charging unfair labor practices followed.

After Respondent filed its answer to this complaint, General Counsel for the Board filed a motion to strike the denials in the answer, together with a motion for summary judgment. The Board granted the motion, finding that all the issues raised by Respondent's denials were resolved either in the § 10(k) proceeding or by the General Counsel's evidence in support of his motions. Respondent had not presented any new evidence of its own.

Prior to the § 10(k) hearing, the two unions attempted to resolve their jurisdictional dispute by means of arbitration. In March 1974, the Dispute Board awarded the work to Respondent, on the basis of trade practice. In its § 10(k) deliberations, the Board found that Plaza Glass had not agreed to the settlement procedure used by the unions, that Plaza Glass was not bound by the decision of the Dispute Board, and that the NLRB therefore had jurisdiction over the dispute.

*Reliance on § 10(k) Proceedings*

Respondent objects to the use of findings from the § 10(k) proceeding as a basis for the Board's finding of an unfair labor practice under § 8(b)(4)(D). It argues that § 554 of the Administrative Procedure Act (APA) was violated because no hearing was held before an Administrative Law Judge prior to the Board's finding. Section 554 requires an "opportunity for an agency hearing" in all cases involving an "adjudication" by the agency. Rather than for the Board to rely on its prior § 10(k) proceeding, Respondent wants a formal hearing under the APA to decide all matters pertaining to the unfair labor practice charged.

In *International Telephone & Telegraph Corp. v. Local 134, International Brotherhood of Electrical Workers, AFL–CIO*, 419 U.S. 428, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975), the Supreme Court held that the APA does not apply to § 10(k) proceedings. However, findings made in such a proceeding can be relied upon as *evidence* that an unfair labor practice has occurred, even in a proceeding governed by the APA. There is no rule requiring that the APA govern the gathering of all evidence, nor could there be.

In *Bricklayers, Masons & Plasterers International Union of America v. NLRB*, 155 U.S.App.D.C. 47, 475 F.2d 1316 (1973), the D.C. Circuit was faced with a case very similar to this one. That court ruled against the union complaining of the fact that summary judgment had cut off its opportunity for a hearing. The court said:

"When, as at present, the section 10(k) determination does not end the matter and an unfair labor practice complaint issues, the proceedings become adjudicatory. Should a factual issue be involved as to the unfair labor practice, the usual intermediate decision of the Trial Examiner would be required under the A.P.A., section 554(c)(2). Here, however, the prohibited conduct constituting the unfair labor practice was not denied. The only factual dispute was whether there had been an agreed method of settlement. This had been resolved by the Board in the section 10(k) proceedings. To relitigate it, as the Unions sought, would not have been consistent with the plan of the statute. Nor does that plan require the Board, after the unfair labor practice complaint has issued, to require the evidence upon which it has rendered its section 10(k) decision to be reconsidered by a

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another

trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work: . . . ."

Trial Examiner who would then recommend a decision." *Id.* at 1322.

We find this reasoning persuasive here. When no new evidence on an issue is presented, reliance on the findings on that issue in the § 10(k) proceeding is proper.

The Fifth Circuit has reached a similar conclusion. In *NLRB v. International Longshoremen's Ass'n, Local 1576*, 409 F.2d 709 (5 Cir. 1969), the trial examiner at the § 8(b)(4)(D) hearing relied entirely on the record from the § 10(k) hearing, since no new evidence was introduced. Indeed, the trial examiner felt bound to follow the Board's § 10(k) decision as controlling. The Board then adopted the examiner's findings and conclusions. The court of appeals enforced the Board's order and rejected the union's contention that the APA had been violated by the fact that the trial examiner felt bound by the prior § 10(k) findings. The court found the case analogous to those in the representation context, in which it is well-settled that "the Board is not required to relitigate a representation issue in an unfair practice proceeding absent additional evidence which is not merely cumulative. *Pittsburgh Plate Glass Co. v. NLRB*, 1941, 313 U.S. 146, 158, 161–162, 61 S.Ct. 908, 85 L.Ed. 1251." 409 F.2d at 710. *See also NLRB v. W.S. Hatch Co.*, 474 F.2d 558, 562 (9 Cir. 1973).

■ Respondent suggests that *Bricklayers, supra*, was wrongly decided, and that the NLRB should not be able to escape the requirements of the APA by basing its finding of an unfair labor practice on the record of the § 10(k) proceeding. However, the trend of modern cases favors not relitigating matters already resolved in a prior setting. As this court said in 1971:

"It is settled law that when no fact question is involved or the facts are agreed, a plenary, adversary administrative proceeding involving evidence, cross-examination of witnesses, etc., is not obligatory—even though a pertinent statute prescribes a hearing. In such situations, the rationale is that Congress does not intend administrative agencies to perform meaningless tasks" (citations omitted).

*United States v. Consolidated Mines & Smelting Co., Ltd.*, 455 F.2d 432, 453 (9 Cir. 1971). *See also NLRB v. Mar Salle, Inc.*, 138 U.S.App.D.C. 135, 425 F.2d 566, 571–73 (1970). Accordingly, we hold that the findings of a § 10(k) proceeding may be used as evidence in a subsequent hearing, subject to refutation. When these findings are not contradicted, as in the case at bar, they may be the sole basis for a subsequent finding.

Respondent also argues that the different standard of proof in the § 10(k) proceeding prevents use of its findings. At the § 10(k) proceeding the Board "need only find that there is reasonable cause to believe that a § 8(b)(4)(D) violation has occurred"; in the § 8(b)(4)(D) violation hearing, the standard is "a preponderance of the evidence." *NLRB v. Plasterers' Union*, 404 U.S. 116, 122, n.10, 92 S.Ct. 360, 365, 30 L.Ed.2d 312 (1971).

■ But here the Board did not simply rely on its previous adjudication at the § 10(k) stage, but rather re-examined the record and made independent findings with regard to the commission of unfair labor practices by Respondent. The same evidence was used to resolve the jurisdictional dispute at the § 10(k) hearing and to support the Board's finding of a violation of § 8(b)(4)(D). However, it is apparent from the language of the Board's decision and order that the Board's prior findings were not the sole basis for the subsequent decision. In its decision, the Board stated:

"This undisputed evidence, which as noted above is neither supplemented nor controverted in this proceeding, likewise establishes, and we find, that Respondent had engaged in conduct with an object proscribed by § 8(b)(4)(D) of the Act, in violation thereof." (T.R. at 132).

So while the evidence presented at the § 10(k) proceeding was the sole basis for the Board's subsequent decision regarding the unfair labor practice, it seems clear that the preponderance standard was applied and met. Under these circumstances, we believe that reliance upon the findings of fact from a § 10(k) proceeding as evidence to

support a later finding of a § 8(b)(4)(D) violation is proper.

## Summary Judgment

Respondent argues that summary judgment should not have been granted because factual issues remained undecided. This contention actually goes to the propriety of granting the motion to strike Respondent's answers, since, once these were removed, no factual issues remained. So if no factual issues were raised by Respondent's answer, summary judgment was properly granted.

In its answer, Respondent put in issue, *inter alia*, whether a subcontracting agreement existed between Plaza Glass and the main contractor, whether Plaza Glass was an employer covered by the N.L.R.A., and whether any Ironworker representatives had threatened Plaza Glass. However, in its opposition to the motion for summary judgment, Respondent simply argued that a hearing was necessary because the issues involved could not be raised in a court or in a § 10(k) hearing. Respondent presented no affidavits or other evidence in support of its opposition to the summary judgment motion, nor did it indicate that there existed any new evidence to controvert the evidence presented at the § 10(k) hearing. As a result, the Board had only the record of the § 10(k) proceeding, and the evidence offered by its General Counsel in support of his motions, to use in considering the disposition of those motions.

■ An independent review of the record in the § 10(k) proceeding leads to the inescapable conclusion that all issues relevant to the unfair labor practice issue were resolved by the evidence presented at that proceeding or by the evidence presented in support of the motion for summary judgment. Respondent denied having failed to notify the Regional Director of any intention to comply with the § 10(k) order, but presented no affidavits or other evidence to counter that submitted to the Board by its General Counsel. The Board could reasonably infer from this failure to notify the Regional Director that the union was still demanding the work in violation of § 8(b)(4)(D). Since no evidence was presented by respondent either in the § 10(k) proceeding or in the hearing on the motions, summary judgment was proper.

The language of § 10(k) also supports this conclusion. The last sentence of that section provides that "[u]pon compliance by the parties to the dispute with the decision of the Board . . . such charge shall be dismissed." 29 U.S.C. § 160(k). The implication, then, is that if there is no compliance, the charge is not dismissed. In order to comply, a party is required to notify the Board of its intent to comply. Respondent did not do so. Therefore, the Board was justified in acting on the prior charge.

■ Public policy clearly favors the granting of summary judgment here, where no relevant factual issues exist. As pointed out by the D.C. Circuit, it would not be "consistent with the plan of the statute" for Respondent to relitigate issues that had previously been resolved. *See Bricklayers, supra,* at 1322. In a case involving representation issues, the same court discussed at length the use of summary judgment when all factual issues had been resolved in a prior hearing:

> "While it would be proper for the Board to grant summary judgment in a case wherein the respondent had not had ample opportunity to litigate fully all relevant issues, it would be irresponsible for the Board to waste costly administrative time needlessly when all of the factual issues have previously been resolved. Occasionally the Board may make a mistake in its determination that all the issues are clearly drawn, as it has done in the cases cited by respondent. When that occurs, the reviewing court will recognize this fact immediately and send the case back for an evidentiary hearing. Thus the interests of due process are protected through the vehicle of judicial review" (footnotes omitted).

*NLRB v. Mar Salle, Inc., supra,* at 573. *See also NLRB v. W.S. Hatch Co.,* 474 F.2d 558, 562 (9 Cir. 1973). Thus, the use of summary

judgment was proper, and should not be disturbed by this court.

### Arbitration Agreement

Respondent lastly contests the Board's finding that Plaza Glass was not bound by the findings of the Dispute Board. Plaza Glass formerly had entered into an agreement to submit matters to the National Joint Board for the Settlement of Jurisdictional Disputes. This board was dissolved in 1973 and replaced with the Dispute Board, which awarded the work to Respondent. The NLRB found that Plaza Glass had not agreed to be bound by a decision of the Dispute Board.

■ The NLRB's findings of fact will be upheld if supported by "substantial evidence" and its legal conclusions affirmed unless "arbitrary and capricious." *NLRB v. International Longshoremen's & Warehousemen's Union Local 50*, 504 F.2d 1209, 1214 (9 Cir. 1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975). The Board found that Plaza Glass was not bound by virtue of its subcontracting agreement because that agreement referred to the "National Disputes Board," which went out of existence on May 31, 1973. The Board further found that Plaza Glass had not expressly consented to be bound by the decision of the Dispute Board and had not participated in the submission of the dispute to that body.

■ The Board concluded on the basis of its prior decision in *Bricklayers, Masons and Plasterers' International Union, Local No. 1 (Lembke Construction Co.)*, 194 N.L.R.B. 649, 650–51 (1971), that Plaza Glass' obligation to be bound by the National Board terminated when the Dispute Board replaced the National Board. The Board's reasoning in *Lembke* with regard to the replacement of one "National Joint Board" with a new "National Joint Board" seems equally compelling here:

"The Board has consistently interpreted Section 10(k) to mean that the employer making the work assignment, as well as the rival unions claiming the work, comprise the 'parties to such dispute,' and

that all must approve and enter into a voluntary adjustment procedure in order to preclude a hearing and determination pursuant to that section. In the instant case, the parties' contractual commitment to comply with National Joint Board determinations clearly had reference to a specific existing National Joint Board. There is no evidence to suggest that the parties intended by their 1969 contracts to be bound by any other than the then existing National Joint Board.

"Nor is there any principle of contract law by which the parties automatically became bound to the new National Joint Board, as if by operation of law, when that entity came into being during the parties' contract term. Although the new entity was designated by the same name, 'National Joint Board,' it is clear that neither the Employer nor ABC had in mind any body not then in existence when they agreed to be bound by decisions of the existing 'National Joint Board.' The mere fact, therefore, that a new 'National Joint Board' was created cannot establish that the Employer was bound by its decisions. To hold otherwise would be to find that, as far as the Employer's contractual obligations are concerned, no legal distinction exists between the original National Joint Board and the reconstituted National Joint Board and that National Joint Boards are, in effect, interchangeable. Accordingly, when the original National Joint Board expired on September 30, 1969, the parties' contractual obligation thereto also lapsed" (footnotes omitted). *Id.* at 651.

*See also* Restatement of Contracts §§ 461, 463 (1932). Moreover, the procedure followed by the two boards are different, and Respondent's view would force Plaza Glass to accept an entirely different arbitration mechanism than the one it agreed to.

Respondent also argues that Plaza Glass participated in the proceedings before the Dispute Board by supplying the Glaziers with supportive material, including blueprints, and that Plaza Glass should there-

fore be bound. However, Plaza Glass was neither present nor represented in the proceedings, it made no submission of evidence or arguments, and it did not expressly consent to the jurisdiction of the Dispute Board. Plaza Glass simply complied with a request for materials from the union that represented its employees. There was no indication that this cooperation was intended as a commitment to be bound by the Dispute Board's decision. Therefore, the Board's decision that Plaza Glass was not so bound is supported by more than substantial evidence.

### Conclusion

The order of the NLRB is enforced.