**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY, LOCAL NO. 741, Respondent.**

No. 82–7235.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1983.

Decided April 28, 1983.

Edward S. Dorsey, Atty., N.L.R.B., Washington, D.C., for petitioner.

Stanley Lubin, McKendree & Lubin, Phoenix, Ariz., for respondent.

Before GOODWIN, TANG and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge.

The National Labor Relations Board petitions this court to enforce its order in 259 N.L.R.B. No. 123, arising out of a jurisdictional dispute between the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local Union No. 741 and the Laborers' International Union of North America, Local No. 479.

The Ashton Company was awarded a contract by the American Smelting and Refining Company to construct a replacement flotation circuit at the Mission Copper Mine at Sahuarita, Arizona. At a prejob conference Ashton announced that it was assigning the process piping work on the project to its employees represented by the Laborers. The Plumbers local protested and through its international union filed a claim to the process piping work with the AFL–CIO's Impartial Jurisdictional Disputes Board (IJDB). Ashton and its collective bargaining representative, the Arizona Chapter of the Associated General Contractors (the AGC) informed the IJDB that it would not appear at the IJDB hearing and would not abide by its decision. The IJDB awarded the process piping work to the Plumbers.

The Plumbers demanded that Ashton honor the IJDB decision and reassign the work to its members. Ashton ignored this demand. On May 5, 1980 the Plumbers began picketing at Ashton's job site, causing numerous work stoppages. Ashton filed a petition for injunction under § 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*), and the Plumbers stopped picketing on August 7, 1980.

Ashton also filed a complaint with the National Labor Relations Board claiming that the Plumbers had engaged in an unfair labor practice forbidden by § 8(b)(4)(i) and (ii)(D) of the Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(D), forbidding coercion or restraint to force any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft or class, rather than to employees in another labor organization, or in another trade, craft or class.

The Plumbers defended their picketing, asserting that Ashton was bound by the IJDB jurisdictional award because of Clause 1101.1 of Ashton's and the Associated General Contractor's Master Labor Agreement with the Laborers and four other basic craft unions. Ashton has no contract with the Plumbers. In effect, the Plumbers were arguing that they are a third party beneficiary of the collective bargaining agreement. Clauses 1101.1 and 1101.3.9 of the MLA provide:

"1101.1—All jurisdictional disputes with AFL–CIO Building Trades Sub Crafts shall be determined in the manner and by the procedure established by the Building and Construction Trades Department of the AFL–CIO through the National Joint Board for the Settlement of Jurisdictional Disputes in the Building and Construction Industry. Such decisions shall be final and binding upon and put into effect by the Contractor and the Union without delay.

. . . . .

1101.3.9—If and when the Parties signatory hereto become a part of a National Joint Board for the Settlement of Jurisdictional Disputes or other similar National Plan, said Plan shall supersede the provisions contained in this Article 11, 1101.1 and 1101.2, and the Parties mutu-

ally agree to be bound by and implement said new Plan."

Representatives of the Associated General Contractors and the five unions party to the Master Labor Agreement testified that Clause 1101.1 was intended to protect the unions who signed the agreement from losing work to sub-craft unions hired by subcontractors. The clause was not intended to benefit third party sub-craft unions like the Plumbers. The inclusion of Clause 1101.3.9 was pointed to as evidence that the Ashton Company was specifically not bound by any decision of the IJDB, because it has never "become a part of a National Joint Board for the Settlement of Jurisdictional Disputes or other similar National Plan."

■ The Plumbers contend that parol evidence was improperly admitted in the N.L.R.B. hearing to interpret Clause 1101.1 of the Master Labor Agreement. This contention is without merit. The Clause's meaning is not clear on its face, and evidence as to the intent of the signatories to the contract is therefore admissible. "The very nature of a collective bargaining agreement requires that it be read in light of bargaining history and the history of the parties' own interpretation." *Communication Wkrs. of Amer. v. Pacific N.W. Bell Tel. Co.,* 337 F.2d 455, 459, (9th Cir.1964); *see generally,* Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1500 (1959).

The N.L.R.B. found that the Ashton Company was not bound by the decision of the IJDB because it had never consented to be bound. The N.L.R.B. also found that only a signatory union to the Master Labor Agreement had standing to invoke the IJDB's procedures. The N.L.R.B. therefore found that the N.L.R.B. itself could decide the underlying jurisdictional dispute. It heard evidence introduced by the Laborers, the Ashton Company, and the Plumbers. The N.L.R.B. concluded that the employees represented by the Laborers were entitled to perform the disputed work. The N.L.R.B. relied on the collective bargaining agreements, the Ashton Company's preference and past practice, and the economy and efficiency of operation. It ordered the Plumbers Union to comply with this finding

and to notify the N.L.R.B. in writing that it would refrain from economic coercion to force Ashton to assign the work to the Plumbers.

The Plumbers did not comply with the N.L.R.B.'s order. On August 6, 1981, the N.L.R.B. issued a complaint against the Plumbers for engaging in unfair labor practices. In the hearing upon that complaint, the Plumbers attempted to relitigate the jurisdictional determination that had been made by the N.L.R.B. The N.L.R.B. refused to reconsider its decision, found that the Plumbers had engaged in an unfair labor practice and ordered corrective action. The Plumbers continue to refuse to comply.

■ The N.L.R.B.'s findings of fact must be affirmed if they are supported by "substantial evidence" and its legal conclusions upheld unless they are "arbitrary and capricious." *N.L.R.B. v. International Ass'n of Bridge, Etc.,* 549 F.2d 634, 640 (9th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977).

■ The N.L.R.B.'s interpretation of a collective bargaining agreement "is entitled to deference" so long as it "has a reasonable basis in the contract's terms, the Act's policies, and the Board's expertise." *N.L.R.B. v. C.K. Smith & Co., Inc.,* 569 F.2d 162, 167 (1st Cir.1977), *cert. denied,* 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1122 (1978).

■ The N.L.R.B.'s interpretation of the Master Labor Agreement is reasonable. The IJDB's jurisdictional award was not binding on Ashton.

Under §§ 8(b)(4)(i) and (ii)(D) and 10(k) of the Act, 29 U.S.C. §§ 158(b)(4)(i) and (ii)(D) and 160(k), the N.L.R.B. must decide jurisdictional disputes unless all parties agree to settle the case or have agreed on a voluntary method of settlement. In *N.L.R.B. v. Plasterers',* 404 U.S. 116, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971), two unions submitted their jurisdictional dispute to the National Joint Board for Settlement of Jurisdictional Disputes of the AFL–CIO, but then one of them refused to honor the decision and picketed the contractor to force reassignment of the work. The employer filed a § 8(b)(4)(i) and (ii)(D) unfair labor practices complaint with the N.L.R.B.

against the picketing union. The employer had not agreed to submit to decisions by the AFL–CIO's jurisdictional dispute board. Only the competing unions, not the employers, had agreed to a voluntary method of settlement. The Supreme Court held that the N.L.R.B. properly had power to decide the jurisdictional dispute.

In *Labor Board v. Radio Engineers,* 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961), two labor unions were engaged in a jurisdictional dispute and one of them caused a work stoppage. The employer filed an unfair labor practice charge. The N.L.R.B. held that the union creating the work stoppage was not entitled to have the work assigned to its members. But the N.L.R.B. refused to make an affirmative award of the work between the employees represented by the two unions. The union refused to comply with the decision and the later cease and desist order. The Supreme Court held that the N.L.R.B.'s order was defective because it had not discharged its duty under § 10(k) to "determine the dispute." The Supreme Court held that the N.L.R.B. has an affirmative duty to award work between the employees of competing unions. Otherwise, employers would not be protected from being "the helpless victims of quarrels that do not concern them at all." *Id.* at 581, 81 S.Ct. at 335. In the case at bar, Ashton is in just that predicament, and the N.L.R.B. was not only empowered to decide the dispute, it was obligated to do so.

In *N.L.R.B. v. International Ass'n of Bridge, Etc.,* 549 F.2d at 641, we enforced an order of the N.L.R.B. based on the N.L.R.B. finding that an employer was not bound by a jurisdictional decision of the AFL–CIO dispute board because the employer had not expressly consented to be bound and had not participated in the submission of the dispute to that body. Accordingly, the N.L.R.B. decided the dispute and we enforced the N.L.R.B. order. As in this case, the N.L.R.B. awarded the work to the union that had a contract with the employer, in spite of an IJDB award in favor of the other union.

■ The N.L.R.B.'s jurisdictional award was reasonable. It is supported by:

1. The Master Labor Agreement that governs the relationship between the Laborers and the Ashton Company and explicitly contains a separate job classification and rate of pay for Laborers who perform process piping work.

2. Past use of Laborers to install process piping at the same work site and elsewhere in Arizona.

3. Efficiency and economy. Laborers are prepared under their contracts to do the demolition, cleanup and miscellaneous work associated with process piping, whereas Plumbers are not. Having Laborers do the process piping means that the company can utilize its regular employees to do other work under general labor classifications when there is no process piping work to be done, allowing the company to maximize the utilization of its work force and prevent layoffs.

The N.L.R.B.'s finding that the Plumbers committed an unfair labor practice is supported by substantial evidence; the remedial order is reasonable.

The N.L.R.B.'s order is enforced.