EMILIO M. GARZA, Circuit Judge,
dissenting:
The plaintiffs in this case' — the Sierra Club, the Wilderness Society, and the Texas Committee on Natural Resources (collectively “the Environmentalist Groups”)— have not identified a “final agency action” subject to judicial review. Without a final agency action, the district court lacked jurisdiction to review the Environmentalist Groups’ claims. Accordingly, I dissent.
I
In light of the majority’s lengthy discussion of the history of forest management, and its extensive analysis of administrative and constitutional law, it is important to emphasize what this case is not about. This case is not about whether the Environmentalist Groups have Article III standing. This case has nothing to do with the well-pleaded complaint rule. And, despite the majority’s characterization of this dissent, this case does not implicate the so-called “record rule.”
It is also important to describe what the Environmentalist Groups’ complaint alleges. The Environmentalist Groups have not challenged a site-specific timber sale. Nor have they challenged the Forest Service’s Land Resource Management Plan (“LRMP”). Rather, they complain generally about the Forest Service’s timber harvesting practices and the effects of these practices over the last twenty years. They specifically allege that, in violation of the National Forest Management Act (“NFMA”) and its attendant regulations, the Forest Service has failed to protect key resources and to provide for diversity of plant and animal species in Texas’s national forests.[1]
Given the posture of this case, we are faced with only one issue: Did the district court have jurisdiction to review the Environmentalist Groups’ broad challenge to the Forest Service’s management of Texas’s national forests? It is on this issue that the majority and I disagree.
II
The NFMA does not provide for judicial review of Forest Service decisions, and therefore, the general review provisions of the Administrative Procedure Act (“APA”) apply by default. See 5 U.S.C. § 704 (“Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.”). The APA imposes limits on a district court’s review of agency action. For example, if a plaintiff seeks review under the APA then the “agency action in question must be [a] ‘final agency action.’ ” Lujan v. National Wildlife Federation, 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990). *376 For an agency action to be “final,” it “must mark the consummation of the agency’s decisionmaking process,” and “must be one .by which rights or obligations have been determined, or from which legal consequences will flow.” Bennett v. Spear, 520 U.S. 154, 177, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997) (citations and internal quotation marks omitted). “If there is no ‘final agency action’ ... [then] a court lacks subject matter jurisdiction.” American Airlines, Inc. v. Herman, 176 F.3d 283, 287 (5th Cir.1999); see also Wilderness Soc’y v. Alcock, 83 F.3d 386, 388 n. 5 (11th Cir.1996) (noting that courts have jurisdiction “over a challenge under the NFMA only if the agency action is final”).
In Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the Supreme Court elaborated on the limits to judicial review under the APA. The plaintiffs in Lujan averred that the Department of Interior’s “land withdrawal program,” which made over 160 million acres of federal land available for commercial use, violated the Federal Land Policy Management Act and the National Environmental Policy Act. The Court upheld the district court’s grant of summary judgment in favor of the defendants for two reasons. First, the Court held that the plaintiffs lacked standing because they had not alleged specific facts showing that they were actually affected or aggrieved by agency action. See id. at 882-90, 110 S.Ct. at 3185-90. Second, the Court held that the plaintiffs’ claims were not entitled to judicial review because the challenged “land withdrawal program” was not “an identifiable action or event,” and therefore, did not constitute a “final agency action” under the APA. Id. at 899, 110 S.Ct. at 3194.
In discussing the APA’s finality requirement, the Court emphasized that because the plaintiffs had brought a “generic challenge” to all aspects of the “land withdrawal program,” they had failed to direct their attack against a particular final agency action. Id. at 891, 110 S.Ct. at 3190. In reaching this conclusion, it admonished the lower courts to adhere to their traditional institutional role:
Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of the laws only when, and to the extent that, a specific “final agency action” has an actual or immediate threatened effect. Such an intervention may ultimately have the effect of requiring a regulation, a series of regulations, or ’ even a whole “program” to be revised by the agency in order to avoid the unlawful result that the court discerns. But it is assuredly not as swift or as immediately far-reaching a corrective process as those interested in systemic improvements would desire. Until confided to us, however, more sweeping actions are for the other branches.
Id. at 894, 110 S.Ct. at 3191. Thus, the Court established a presumption in favor of case-by-case adjudication on the concrete facts of specific agency decisions, and against challenges seeking programmatic improvements to the administrative process as a whole. See id. at 890-94, 110 S.Ct. at 3189-92.
A review of the pleadings in this case shows that the Environmentalist Groups have not directed their challenge against a particular final agency action. The Forest Service’s alleged failure to implement timber sales in compliance with the NFMA neither constitutes “an identifiable action or event,” id. at 899, 110 S.Ct. at 3194, nor “mark[s] the consummation of the agency’s decisionmaking process,” Bennett, 520 U.S. at 178, 117 S.Ct. at 1168. Instead, it reflects the cumulative effect of the many individual timber sales approved by the Forest Service since the NFMA became law in 1976. Logging pursuant to these past sales has occurred. Thus, having *377 foregone a direct challenge to these sales,[2] the Environmentalist Groups now seek a judicial audit of the effects of the Forest Service’s timber management practices over the last twenty years. As Lujan makes clear, this generic challenge is not reviewable under the APA. See Lujan, 497 U.S. at 890-94, 110 S.Ct. at 3189-92.
The majority asserts that Lujan’s reasoning does not preclude review of the Environmentalist Groups’ complaint because the Environmentalist Groups have “alleged particularized injury and supported their allegations with voluminous evidence of individualized harm.” According to the majority, the Environmentalist Groups have not made a generic challenge to Forest Service practices, but instead have “pointed to specific activities on specific plots in specific National Forests.” The majority, however, conflates the standing requirements of Article III with Lujan’s, discussion of the APA’s “final agency action” requirement. See Bennett v. Spear, 520 U.S. 154, 177, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997) (noting that “the question of whether the Secretary’s action is final ... [should not be confused with the] separate question of whether the petitioners’ harm is ‘fairly traceable’ to the Secretary’s action”); Catron County Bd. of Comm’rs v. United States Fish and Wildlife Serv., 75 F.3d 1429, 1434 (10th Cir.1996) (“In addition to Article III standing requirements, a plaintiff seeking review pursuant to the APA must [] identify some final agency action ... [that] form[s] the basis of its claims.”).
Although the Environmentalist Groups may have Article III standing, we nonetheless must decide whether they have identified a final agency action for review or whether their challenge to the Forest Service’s timber management practices is generic.[3] See Catron, 75 F.3d at 1434. Allegations of “particularized injury” and “voluminous evidence of individualized harm” are not dispositive as to whether jurisdiction exists to review the Environmental Groups’ challenge. In Lujan, even though the plaintiffs referenced “many individual actions ... in the[ir] complaint,” “the flaws in the entire ‘[land withdrawal] program’ ... [could not] be laid before the courts for wholesale correction under the APA.” Lujan, 497 U.S. at 893, 110 S.Ct. at 3190-91. Thus, as Lujan shows, to determine whether the Environmentalist Groups’ challenge is generic, we should not focus on the evidence that they marshal in support of their challenge — the “many individual actions referenced in the[ir] complaint” are not relevant. Id. Instead, we must examine the “particular agency action” that the Environmentalist Groups have challenged. Id. at 891, 110 S.Ct. 3177, 110 S.Ct. at 3190. Again, a review of the pleadings shows that the Environmentalist Groups have not directed their attack against a final agency action.[4]
*378 Perhaps in recognition that the Environmentalist Groups have not identified a particular agency decision, the majority also concludes that the Forest Service’s alleged failure to comply with the NFMA and its attendant regulations constitutes a “failure to act.” I agree that under certain circumstances, agency inaction may be sufficiently final to make judicial review appropriate. See Sierra Club v. Thomas, 828 F.2d 783, 792-98 (D.C.Cir.1987) (discussing different forms of agency inaction). The Forest Service’s alleged failure to maintain Texas’s national forests, however, does not reflect agency inaction. As Judge Williams explained in Public Citizen v. Nuclear Regulatory Commission:
Whatever the hypothetical strength of petitioners’ theory, it has no application here. The agency had acted. Its Policy Statement is a formal product of the Commission.... Petitioners just do not like what the Commission did.
Our acceptance of petitioners’ argument would make a nullity of statutory deadlines. Almost any objection to an agency action can be dressed up as an agency’s failure to act. We can imagine situations where an agency’s effort to comply was so flimsy or unpublicized that affected parties could not be expected to grasp that it was attempted compliance. But this is not such a case.
845 F.2d 1105, 1108 (D.C.Cir.1988) (emphasis added). In this case, the Forest Service has not failed to issue a LRMP or to conduct timber sales. Moreover, the Environmentalist Groups have not argued that the Forest Service has not attempted to comply with the NFMA and its regulations. In short, the Forest Service has not failed to act.[5]
I disagree with the majority that preventing the Environmentalist Groups from challenging the general effects of the Forest Service’s timber management practices would mean that there would never be an “opportunity to challenge a timber sale resulting from even-aged timber management.” If the Environmentalist Groups believe that any particular proposed even-aged timber sale will result in NFMA and regulatory violations, then they may file an action challenging the Forest Service’s decision to proceed with the sale. See Ohio Forestry Ass’n, Inc. v. Sierra Club, 523 U.S. 726, -, 118 S.Ct. 1665, 1670, 140 L.Ed.2d 921 (1998) (holding a challenge to the lawfulness of the Forest Service’s LRMP not justiciable) (“[Bjefore the For *379 est Service can permit logging, it must focus upon a particular site, propose a specific harvesting method, prepare an environmental review, permit the public an opportunity to be heard, and (if challenged) justify the proposal in court.”). Judicial review would then take place with the “benefit of the focus that a particular logging proposal could provide.” Id. at 1672.
The Eleventh Circuit’s recent opinion in Sierra Club v. Martin, 168 F.3d 1 (11th Cir.1999), to which the majority cites, demonstrates how environmentalist groups may legitimately challenge the Forest Service’s timber management practices. Contrary to the majority’s assertion, that ease is not “identical” to this one. In Martin, the Forest Service approved timber sales for seven tracts of land in the Chattahoochee and Oconee National Forests in Georgia. The plaintiffs filed suit, contending that the “timber cutting projects would harm plant and animal species in the Forest,” and that the “proposed clearcutting” would not adequately protect the Forest’s key resources. Id. at 3. Unlike the Environmentalist Groups in this case, the plaintiffs did not seek a judicial audit of the Forest Service’s practices in Georgia’s national forests, but challenged site-specific actions that corresponded to particular agency decisions.[6] Thus, unlike the Environmentalist Groups in this case, the plaintiffs in Martin identified a final agency action subject to judicial review.
I appreciate that requiring plaintiffs to bring challenges to individual timber sales before logging occurs places a higher burden on environmentalist groups wishing to monitor Forest Service management practices; however, as the Court noted in Lujan, judicial review of only final agency actions “is the traditional, and remains the normal, mode of operation of the courts.” Lujan, 497 U.S. at 894, 110 S.Ct. at 3191. Courts are not equipped to resolve the technical issues involved in agency deci-sionmaking at “a higher level of generality.” Id. As the Seventh Circuit has explained:
Administrative agencies deal with technical questions, and it is imprudent for the generalist judges of federal district courts and the courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented and considered by the agency. Trees may seem far removed from the arcana of administrative determination, but one has only to glance at the documents submitted in this case to realize that “silviculture” is in fact a technical field, and not just one with a dry and forbidding vocabulary.
Cronin v. United States Dept. of Agric., 919 F.2d 439, 444 (7th Cir.1990). Wholesale improvement to the Forest Service’s management of the national forests is best sought in the “offices of the [Department of Agriculture] or the halls of Congress, where programmatic improvements are normally made.” Lujan, 497 U.S. at 891, 110 S.Ct. at 3190. Until confided to the courts, the “more sweeping actions” are reserved for the other branches of government. Id.
Ill
The district court lacked jurisdiction to review the Environmentalist Groups’ broad challenge to the Forest Service’s management of Texas’s national forests. The majority’s opinion ignores the important limits on judicial review that define the role of courts in our modern administrative state. In doing so, it undermines the purpose behind Congress’s enactment of the NFMA — that is, to “get the practice of forestry out of the courts and back to *380 the forests.” See 122 Cong. Rec. 33835 (Sept. 30, 1976) (remarks made during the adoption of the Conference Report by the NFMA’s sponsor, Sen. Humphrey). Accordingly, I dissent.

. Before the district court, the Environmentalist Groups also alleged that the Forest Service failed to keep current and adequate inventories and monitoring data on key resources in Texas’s national forests. The district court agreed with the Environmentalist Groups, concluding that the Forest Service had failed to meet its inventorying and monitoring obligations. The Forest Service has not appealed the district court’s ruling on this issue. Accordingly, this issue is not properly before us on appeal. See, e.g., Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 257 n. 6, 92 S.Ct. 885, 888 n. 6, 31 L.Ed.2d 184 (1972) ("Since the ruling was not appealed it is not before the Court for review.”).

. Any direct challenge to these timber sales would now be moot. See Florida Wildlife Fed'n v. Goldschmidt, 611 F.2d 547, 549 (5th Cir.1980) ("Where the activities sought to be enjoined have already substantially occurred and the appellate court can not undo what has already been done, the action is moot.”).

. A plaintiff must meet three requirements to establish Article III standing:
First, the plaintiff must have suffered an "injury in fact” — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or ‘hypothetical.’ ” Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly ... tracefable] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.” Third, it must be "likely,” as opposed to merely "speculative,” that the injury will be “redressed by a favorable decision.”
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). A plaintiff, of course, may establish Article III standing without also satisfying statutorily imposed standing requirements. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, -, 118 S.Ct. 1003, 1013, 140 L.Ed.2d 210 (1998) (discussing both Article III and statutory standing).

.The majority concludes that the Forest Service's failure to maintain Texas's national forests constitutes an adjudication under the *378 APA. It reasons that "by process of elimination the decision not to follow the regulations was clearly not a rulemaking, so must therefore be an adjudication.” There are several difficulties with the majority's reasoning. First, as the majority admits, none of the parties argue that the Forest Service’s alleged failure to comply with the NFMA and its regulations constitutes an adjudication. Second, the majority's logic presumes that a final agency action occurred. As discussed above, however, neither the majority nor the Environmentalist Groups have identified a concrete decision made by the Forest Service not to comply with its statutory or regulatory mandates. See Bricklayers, Masons & Plasterers Int'l Union of Am. v. NLRB, 475 F.2d 1316, 1319 (D.C.Cir.1975) ("[Adjudication does not encompass all forms of agency action other than rulemaking. If the action in question does not lead to a 'final disposition' by the agency, it may not be an adjudication.”). Third, the Forest Service's actions do not fit within any accepted definition of the term "adjudication." An adjudication "implies a hearing ... after notice, of legal evidence on the factual issues involved.” Black’s Law Dictionary 42 (6th ed.1990). It is " ‘individual in impact and condemnatory in purpose,’ directed to the determination of the legal status of particular persons or practices through the application of preexisting legal standards.” FTC v. Brigadier Indus. Corp., 613 F.2d 1110, 1117 (D.C.Cir.1979). Unlike a rulemaking, which involves the promulgation of policy-type rules or standards, an adjudication is a "proceeding designed to adjudicate disputed facts in particular cases.” United States v. Florida E. Coast Railway Co., 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973).

. It is worth remembering that the plaintiffs in Lujan also alleged that the agency had violated its statutory mandates. See Lujan, 497 U.S. at 879, 110 S.Ct. at 3183-84. The Court in Lujan, however, did not conclude that the agency had failed to act.

. As the majority notes, the Eleventh Circuit held that the plaintiffs could challenge the Forest Service’s compliance with its LRMP as part of their challenge to site-specific timber sales. See Martin, 168 F.3d at 6. We do not need to consider whether the Eleventh Circuit's holding is correct because the Environmentalist Groups in this case have challenged neither a site-specific timber sale nor the Forest Service's LRMP.